ADDIE L. WEBER, W. L. LARRABEE, AUSTIN S. LA VIGNE, A. G. SEXTON, BERNARD FORER, OTTO E. FISCHER, MARY CAVER, LOIS ST. JOHN SMITH, LESTER MINKEL, RHODA R. MORRIS, JOHN H. TREGURTHA, MABEL WISHART, MABEL WITTE, RESPONDENTS-APPELLEES, v. BOARD OF EDUCATION OF THE CITY OF TRENTON, PROSECUTOR-APPELLANT.

Argued May 21, 1941—Decided September 19, 1941.

For the respondents-appellees, *Jerome C. Eisenberg.*

For the prosecutor-appellant, *Henry M. Hartmann.*

The opinion of the court was delivered by

WOLFSKEIL, J.   The Board of Education of Trenton appeals in this case from a judgment of the Supreme Court which affirmed a decision of the State Board of Education establishing the contractual rights of the respondents to their

salaries as teachers for the school year 1939-1940, including the increment for which provision had been made in the salary schedule. The differences between the teachers and the Board hinged upon the endeavors of the Board to lower the salaries to meet what it regarded as an economic emergency. They embraced other litigation beside the one now under review. A summary of the salient facts as they developed is accordingly pertinent.

The Trenton Board of Education, under stress of fiscal conditions, ordered a fifteen per cent. salary reduction for the school year 1937-1938. This was in correspondence with reductions of salaries in other branches of the local government. Upon appeal by the teachers to the Commissioner of Education the resolution directing the decrease was declared invalid. That ruling was affirmed by the State Board of Education. An appeal was taken to the Supreme Court. Prior to the decision of the Supreme Court on the subject of the reduction resolution, the Board of Education offered a plan for disposition of the controversy. It proposed that if the teachers would abandon the litigation and consent to the fifteen per cent. reduction for the school year 1937-1938, the Board would retain the teachers' salary schedule, then inoperative but not repealed, and would grant the following: (a) a two-thirds restoration of the fifteen per cent. reduction for the school year 1938-1939, plus one salary increment as provided in the schedule, to all teachers who had not reached the maximum salaries provided by the schedule; (b) the full contractual salaries to all teachers who had reached their maximum salaries for the school year 1938-1939.

Approximately ninety-three per cent. of the teachers signed the form which had been sent to them, signifying their acceptance and their willingness to release the claims which they might have against the Board. Seventeen teachers refused the compromise arrangement. They were paid the respective amounts by which their salaries had been reduced for the year 1937-1938. The teachers who acceded to the Board's proposal did not receive any part of the amount by which their salaries had been reduced for that same school year. Therefore, up to the opening of the schools for the

year 1938-1939 the continuance of the litigation resulted in the objecting teachers receiving in that regard more than those who acquiesced. Conceiving it appropriate that some attempt should be made towards adjustment, so that the teachers who accepted the settlement should not be in a financially disadvantageous position as compared to those teachers who rejected the settlement, The Trenton Board of Education, on September 14th, 1939, adopted another resolution, the purpose of which as stated by the Board was intended to bring about some equalization. This resolution read as follows:

"*Whereas,* over ninety per cent. of the teachers and other employees of the Board of Education elected to accept, for the year 1938-1939 10% restoration of their salaries plus one year's increment, and waived all right to any claim for back salary for the year 1937-1938, as well as 5% for the year 1938-1939, as a result of which the taxpayers of the City of Trenton saved over $250,000;

"*Whereas,* a certain number of teachers and other employees refused so to do, and received a full restoration for the year 1938-1939, without waiver of any claim for back salary for the year 1937-1938;
and

"*Whereas,* it is the purpose of the Board of Education to equalize the contractual salaries of the teachers and other employees so that no particular group may obtain any advantage over any other group

"*Now, Therefore, Be It Resolved,* that the salary schedules for teachers and other employees of the Board in effect for 1938-1939 be and they are hereby established as the schedules for salaries of teachers and other employees for the year 1939-1940, provided, however, that only those teachers and other employees are eligible for increments who have elected or shall elect to receive increments for the school years 1938-1939 and 1939-1940 in lieu of complete restoration of contractual salaries for the school years 1937-1938 and 1938-1939."

The respondent teachers appealed to the Commissioner of Education, who upheld the resolution. That decision was

reversed by the State Board of Education, and the determination of the State Board was sustained by the Supreme Court. The appeal now under consideration is from the judgment of the Supreme Court affirming the invalidity of the Trenton Board of Education resolution of September 14th, 1939.

It is contended first that the action of the State Board of Education in deciding against the efficacy of the resolution was void, in that the State Board acted through a committee of three members designated as the "Law Committee," and that there was no statutory authority of the State Board to hear and determine the controversy in that manner. The appellant urges there was only a recommendation by this committee, and no actual decision by the State Board itself. It was stated by the Supreme Court that "there was no objection to jurisdiction *in limine.*" However, the omission of any such objection would have no significance if a tribunal had no jurisdiction or if its judgment were otherwise a nullity. Respondents' reply is that the statute does not categorically require appeals to be heard by the full Board, and that since the Board has statutory power to "frame and modify by-laws for its own government" there is a presumption, in the absence of contrary evidence, that the procedure was in conformity with such by-laws. The matter does not need to rest on any such hypothesis. Though the Board's committee did not have dispositive authority, the State Board itself concededly possessed jurisdiction over the subject-matter, and the fact that the testimony was heard by the committee instead of by the entire State Board could at best be no more than an irregularity of procedure to which no opposition was interposed, the hearing having proceeded without objection. See *North Hudson County Railway Co.* v. *Flanagan,* 57 *N. J. L.* 696. The issue is one primarily of law. In effect the committee passed on it, and the State Board approved and made the determination its own. The final decision was by the State Board, which was empowered to act.

It is maintained next that respondents are guilty of laches. There is a dearth of legal and factual support for this charge. Undue dilatoriness does not appear in the case. The Supreme

Court found that "no situation was changed by the delay of a few months in presenting the matter to the Commissioner of Education." With this we are in accord.

The third point is that respondents waived any rights they may have had to an increase in salary or any increment by continuing without protest in their positions and accepting salaries less the increase or increment. The situation shows this point to be lacking in substance. Waiver arises from intention. It is inferable from circumstances, but only when the evidence warrants the inference. Although respondents accepted salaries minus the increase or increment without formal protest during the brief period pending initiation of their appeal to the Commissioner of Education, such protest as an indication of intent was rendered unnecessary by the course the local Board elected to pursue. The Board did not let the subject rest on assumption, but circularized the teachers, requesting written waivers. The fact that in the face of written acquiescence by some teachers, these respondents refused to sign such waivers is a clear manifestation of an intention to withhold the release of such rights as they possessed under the law. It may be pointed out also that waiver as a defense needs to be presented affirmatively. It was not pleaded in the case and is raised for the first time on the appeal.

Directing itself to the main topic, appellant urges that the local Board of Education had the legal authority to adopt the disputed resolution, and that the resolution represented a valid exercise of power vested in the Board. Support is sought for this contention upon the insistence that the Board has the right to abolish, change or amend its salary schedule and that no increase or increment was granted to the respondents in the manner provided by its rules. Appellant cites *R. S.* 18:13-5, to the effect that the local board "may make rules and regulations not inconsistent with the provisions of this title governing the engagement and employment of teachers and principals, the terms and tenure of employment, the promotion and dismissal of teachers and principals, and the salaries and the time and mode of payment thereof;" also, that the board "may from time to time change, amend,

or repeal such rules and regulations;" further, that the "employment of any teacher by a board, and the rights and duties of the teacher with respect to his employment, shall be dependent upon and governed by the rules and regulations in force with reference thereto."

When appellant rests upon the assertion that there had been no recommendation by the superintendent for these increases, nor any direction for any increase in accordance with the rules and regulations of the Board, the appellant begins with the assumption of correctness in its own view of the very question which has to be determined, namely, whether the increment under tenure that comes with additional years of service is actually a new increase that requires separate authorization each time, or whether it is an integral part of the salary, provided for in the initial contract and thereafter effective automatically. Moreover, the power to make rules and regulations with respect to teachers and their employment does not carry with it the right to abrogate definite salary contracts. Appellant concedes this, as it would naturally need to, and appellant admits the Board would have no power to decrease the basic salary of a teacher under tenure. But it is argued by appellant that omission to pay an annual increment or increase is not a decrease of the basic salary and therefore the right would inhere in the local Board to refrain from paying such increments.

The case of *Gowdy* v. *State Board of Education,* 84 *N. J. L.* 231, is discussed. That case holds that if the effect of an act is to reduce the teachers' salary, it violates the statute. Appellant seeks to maintain that the correct interpretation and objective of the statute is to preserve basic salaries and to bar infringement upon them, but that the true interpretation does not extend to insurance against changes relative to increases merely because those changes might be disadvantageous to the teachers. Appellant conceives this to be a construction more suitable to possibly vacillating revenues of local bodies, and more compatible with the financial stability of the state. Appellant refutes the idea of automatic operation of the yearly increments by pointing out that there were no salary increments from 1933 to 1938, the salary schedule

having lain dormant during that time. As to this, it is sufficient to note that the hiatus in these increments was consequent upon emergency legislation acts adopted by the state legislature that began in 1933 and were effective during the years 1933-1937. Legislative mandate is quite distinct from attempted local arrogation of similar authority, and besides, there appears in the case an express declaration of the local Board not to abandon the salary schedule. Concerning a selection as between one course that might be considered prudently economical and another which some might choose to think less conducive to financial strength, it is a prerogative of the legislature to formulate enactments, and it is not the function of the court to select fiscal policies, but to construe statutes as they are actually framed. In saying that the Gowdy opinion is against decrease of basic salary, but not a bar to elision of increases, appellant again follows a form of begging the question, for as stated above, the crucial point is whether or not the annual increments are inherently part of the so-called basic salary.

Support for the right to abolish a salary schedule is invoked by appellant in the case of *Liva* v. *Board of Education, Lyndhurst Township,* 126 *N. J. L.* 221. That right is not disputed by respondents so long as it is not made to extend to teachers who acquired tenure, and appellant admitted the propriety of this exception. The Liva case is not on fours with the present facts. It proceeded on the supposition that there was no salary schedule in effect, and that hence the local board in that case did not undertake to grant automatic increments. In the case now under review we have a salary schedule that must be taken into account.

The term "increment" has no established meaning in this state through specific adjudication. The dictionary definition seems to make to make it synonymous with "increase." But in the regulations of the local Board there is a clear distinction drawn between "increase in salary" and "increment." An "increase in salary" is grantable only by order of the Board of Education on recommendation of the superintendent of schools. But "yearly increments" are treated differently. The regulations state that such yearly incre-

ments "provided for in the above schedule shall be granted in September or February and shall be given without reference to special increments in salary for advanced courses of study." With regard to the disputed resolution, the respondents began their duties on September 11th, 1939. There was then in effect a schedule of salaries, and there was then no emergent statutory authority to suspend the schedule. The annual increments were integral parts of the salaries, effective when the designated year of service had been attained, that having been the contract with the teachers. It is a statutory requirement that there be a salary schedule, or in its absence, a specific contract with the teacher. The annual increment in a salary schedule is not a prospective increase, subject each time to control of the local authorities before it becomes absolute. It is intrinsically part of the salary, vesting contractually and becoming operative in the various stages of time spaced by the schedule. To hold otherwise would negative the schedule, convert it into a meaningless and futile gesture and be incongruous with the provisions in the local regulations. The resolution in question, though called an equalization measure, had for its effect the curtailment of the salaries of the respondent teachers for the indicated years. The salary schedule was not subject to change or amendment by the local Board, so that its resolution attempting such a result was void.

The judgment of the Supreme Court is accordingly affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, DONGES, HEHER, PERSKIE, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 14.

*For reversal*—None.