335 A.2d 618 (1975)
John KOLCUM et al., Plaintiffs,
v.
BOARD OF EDUCATION OF WOODBRIDGE SCHOOL DISTRICT et al., Defendants.
Superior Court of Delaware, Sussex.
February 26, 1975.
*619 John S. Grady, of Bader, Dorsey & Kreshtool, Wilmington, for plaintiffs.
William Swain Lee, of Betts & Lee, Georgetown, for defendants.

OPINION
CHRISTIE, Judge.
This case is before the Court on cross-motions for summary judgment. The plaintiffs allege that they are entitled to reimbursement for moving expenses incurred at the times they originally accepted employment with the defendant. The plaintiffs are all teachers in Woodbridge School District. The defendants include the Board of Education of the Woodbridge School District (the "Board") and the members of the Board in their individual and official capacities.
Plaintiffs allege that they were induced to accept employment with the defendant Board by an oral promise that they would be compensated for the expense of transporting their personal belongings to the Woodbridge vicinity in the amount of $600 payable in yearly installments of $300 the first year, $200 the second year, and $100 the third year. The defendant Board indicates that the following amounts have been paid:

 DATE OF PAYMENTS
TEACHER EMPLOYMENT 1969-70 1970-71 1971-75 BALANCE
-----------------------------------------------------------------------
Bottinger, Gary 1 Sept. 1969 $300 $200 0 $100
Foster, James 1 Sept. 1970 $300 0 $300
Hopkins, Joan 1 Sept. 1970 $300 0 $300
Hopkins, Paul 1 Sept. 1970 $300 0 $300
Kolcum, John 1 Sept. 1970 $300 0 $300
Rehnstrom, Dawn 1 Sept. 1970 $300 0 $300

*620 It is evident that the Board was faithful to the oral agreement during the 1969-70 and 1970-71 school years, but discontinued making payments in the 1971-72 school year and has made no payments since then.
A demand made by the plaintiffs for their remaining payments was refused. The defendants contend that they are no longer obligated to perform under the oral contract. The Board relies upon a collective bargaining agreement reached by negotiators for the teacher's union and the Board. They contend that the Professional Negotiation Agreement which became effective the 1971-72 school year was intended to set forth the entire compensation package for each and every teacher.
The defendants argue that the oral contract was not intended to reimburse a specific, identifiable expense, i. e., moving expenses. Rather, they contend that it was intended as a general supplement. The defendants argue that the informal supplement contained in the oral agreement was superceded by the general supplement included in the Professional Negotiation Agreement and that all rights under the former oral agreement have been extinguished. In support of this contention the defendants have offered evidence of an oral agreement made during the negotiations stage preceding the Professional Negotiation Agreement between the negotiators for the teacher's union and the Board. The substance of that agreement was the surrender of plaintiff's rights under the oral contract to reimbursement by the teacher's union negotiators. The defendants contend that the failure to incorporate that agreement in the written agreement was due to the insistence of the teacher's union negotiators. Plaintiff's have objected to the entry of this evidence on the record on the grounds that it is parol evidence.
The two issues to be determined are: first, whether the Professional Negotiation Agreement by its express terms or necessary implication supercedes the oral contract; and, second, whether the oral agreement reached during the negotiations stage may be introduced into evidence and, if it may, whether that agreement is binding upon the plaintiffs.

I.
The defendants contend that the Professional Negotiation Agreement was intended to establish the total compensation package which the plaintiffs are entitled to during the 1971-72 and 1972-73 school years. The pertinent provisions of the Professional Negotiation Agreement provide in relevant part:
Article I
RECOGNITION
A. The Board hereby recognizes the Association as the exclusive and sole representative for collective negotiation concerning terms and conditions of employment for certified nonadministrative employees employed by the District, exclusive of supervisory or staff personnel employed more than 185 days.
Article XI
MISCELLANEOUS PROVISIONS
C. Except as this Agreement shall otherwise provide, all terms and conditions of employment applicable on the effective date of this Agreement to employees covered by this Agreement as established by the rules, regulations and/or policies of the Board in force on said date shall continue to be so applicable. Unless otherwise provided in this Agreement, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce, or otherwise detract from any employee benefit existing prior to its effective date.

*621 Article IX
SALARIES
A. The salaries of all employees covered by this Agreement for the school year 1971-72 and 1972-73 Shall be the salaries prescribed by Chapter 13, Title 14 of the Delaware Code plus a supplement from local school district funds in the amount set forth in the local salary schedule for 1971-73, which are attached hereto and made a part hereof.[*]
It is well settled that where a collective bargaining agreement enumerates a base salary (i. e., statutory) augmented by a local supplement, any prior agreements dealing with the same subject matter are superceded. National Labor Relations Act, § 9(a), 29 U.S.C. § 159(a); Mossberg v. Standard Oil Co. of N. J., 98 N.J.Super. 393, 237 A.2d 508 (1967). The subject matter of the Professional Negotiation Agreement is "salary" for future services. The pivotal question then is whether the special supplement for new teachers, which they regarded as being for moving expenses, is also "salary" within the meaning of the Agreement.
The cases in which an attempt has been made to define the term "salary" have uniformly held that the term is ordinarily used in the future tense. Salary is "a periodical allowance made as compensation to a person for his official or professional services or for his regular work." Board of Commissioners of Teller County v. Trowbridge, 42 Colo. 449, 95 P. 554 (1908); In Re Rieb's Estate, 8 Wisc.2d 110, 98 N.W. 2d 453 (1959); State v. Black, 7 Terry 295, 83 A.2d 678 (Del.Supr.Ct.1951). Clearly, the term "salary" implies that a prospective view must be taken. Article IX of the Professional Negotiation Agreement also refers to the "supplement" from local funds. The term "supplement," when viewed in this context, must be taken to be a reference to the generally applicable local supplement available to all qualifying teachers. Such "supplement" is ancillary to and integrally related to "salary." In my judgment, the "supplement" mentioned in Article IX was intended by the express terms of the Professional Negotiation Agreement to accrue only upon the performance of plaintiffs' professional duties as teachers. There is no reference to the special type of supplement used to attract new teachers.
The moving expenses incurred by the plaintiffs were clearly related to making new teachers available for the performance of their professional services on a continuing basis. Defendants, however, have claimed that the supplement here in question was never specifically earmarked for moving expenses but was rather a "general" supplement. The facts do not bear out this characterization. Defendants have admitted that the supplement in question was in addition to the general local supplement then given to all teachers of the Woodbridge School District. Further, the economic conditions prevailing at the time that the oral contracts were made were such that affirmative efforts were made by school districts to attract capable teachers. Reimbursement of moving expenses was found to be an effective means of attracting new teachers to a school district when special efforts were necessary to attract the best-qualified applicants.
Under the circumstances, I find that valid, subsisting oral contracts existed providing for reimbursement of $600 of the expenses incurred by the plaintiffs in accepting the employment with the defendants. These expenses have already been incurred and plaintiffs have long ago begun their employment. The three-year period which must be served by each plaintiff before receiving *622 full payment was merely what is known at law as a condition subsequent which would allow partial divestment if the teacher did not stay three years. The plaintiffs have now performed their duties under the contracts, and the defendants are obliged to perform their duties by paying the remaining payments due the plaintiffs.
A collective bargaining agreement is intended only to establish an accord outlining the terms which will govern the hiring, work and pay conditions of the employees represented. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 97 L.Ed. 1351 (1944). Individual contracts agreeing to the terms of the Professional Negotiation Agreement are still required. The contract between each of the plaintiffs and the Woodbridge School District expressly states that the "purpose of this form is to indicate your salary for the coming year" (emphasis added). Further, the contract renewal is "issued subject to all the provisions of your original contract..." The clear intendment is to cover prospective services only.
The supplement chart incorporated into the Professional Negotiation Agreement shows a linear slope, increasing supplemental pay being based solely upon years of experience and education. If the expenses incurred by recent additions to the staff were considered, it would be reasonably anticipated that the slope would be parabolic or curvilinear. This is a clear indication that if the plaintiffs' vested rights were considered at all, then there was an attempt to forfeit such rights for the benefit of the larger bargaining unit with no compensation to the individual plaintiff.
Finally, Article XI(c) provides that:
* * * Unless otherwise provided in this Agreement, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce or otherwise detract from any employee benefit existing prior to its effective date.
It is clear that special contracts for reimbursement for moving expenses or to attract new teachers by a sort of sign-up bonus were not covered or effectively nullified by the master agreement. There is no specific allusion to this type of benefit in the Professional Negotiation Agreement, and it is clear that the oral contracts in question exist separate and apart from the matters covered within the Professional Negotiation Agreement.
It is well settled that contracts between individuals represented by a bargaining unit with his employer are not automatically nullified upon execution of a collective bargaining agreement. They may be continued in force to the extent that they in no way frustrate the policy of the National Labor Relations Act and do not conflict with the collective bargaining agreement itself. See N. L. R. Act, §§ 1 et seq., 9(a), 29 U.S.C. §§ 151 et seq., 159(a). Therefore, since the oral contracts do not conflict with the Professional Negotiation Agreement and certainly do not frustrate the apparent policies of the National Labor Relations Act, defendants obligations under these contracts remain intact.

II.
In the alternative, defendants urge this Court to consider evidence of an agreement nullifying the moving expense contracts. This agreement is said to have been reached between the negotiators for the School Board and the teachers' union. The basis upon which this parol evidence is sought to be admitted is the alleged ambiguity of the term "supplement" as used in the Professional Negotiation Agreement when applied to the facts of the instant case. Specifically, defendants say there is a question as to whether or not the term as used in the Professional Negotiation Agreement was intended to be so broad as to nullify existing contracts as to the moving expenses formerly incurred by the plaintiffs.
*623 It is clear that if the negotiators lacked the authority to surrender the vested rights of the plaintiffs, then the admissibility of this evidence is moot. Therefore, I will examine that issue first.
The defendants have offered no proof that an express agreement existed between the plaintiffs and the negotiators empowering the bargaining unit to surrender the plaintiffs' vested rights as to reimbursement of expenses already incurred. Under some circumstances, an implied authority may be inferred in an agency relationship from the nature or extent of the function to be performed, from the general course of conducting the business, or from the particular circumstances of the case. The express authority of an agent may include by implication all powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. 3 Am.Jur.2d, Agency § 71, p. 472 (1962). The incidental authority of an agent is limited to those acts which are of a like kind to those he is expressly empowered to do.
The clear purpose of a bargaining unit under the circumstances here present was to establish an agreement as to working conditions and pay scales which would be the consideration in return for the performance of services to be rendered in the future. Individual rights which are to accrue on the basis of future services rendered in his professional capacity as a teacher are usually bargaining tools within reach of the negotiators. These rights connected with services yet to be rendered may be modified or altered for the benefit of the larger body. However, where a minority of teachers have special accrued rights from past performance, there is not a valid bargaining connection between these vested rights and the securing of a favorable pact for the rendition of future services by the entire body of teachers.
The authority of an agent may not be extended beyond its legitimate scope and should be deemed to include only such powers as are practically indispensable and essential in order to carry out the duties actually delegated to the agent. 3 Am.Jur. 2d, Agency § 71, p. 473.
The negotiators could not, in my opinion, tamper with accrued rights that are in the nature of vested contract rights. If they attempted to do so, they have exceeded the scope of their apparent authority. Since no authority was expressly conferred and none may be reasonably implied, any oral agreement nullifying plaintiffs' rights to reimbursement for moving expenses already incurred is a nullity and must be disregarded.
There being no legal effect to the oral agreement said to have been made during the negotiation stages of the Professional Negotiation Agreement, the admissibility of that parol evidence need not be considered.
Summary judgment is entered in favor of plaintiffs.
The defendants must pay over the amounts found to be owing the individual plaintiffs under their contracts.
It is so ordered.
NOTES
[*] Note: The local salary supplement ranges from $500 for a teacher with no experience and no college degree to $1,100 for a teacher with a doctorate and ten years of experience. The chart evidences an upward gradient that is dependent wholly upon educational attainment and experience.