Kenneth R. ROUSE and Darrel L. Daley, on behalf of themselves and all others similarly situated, Appellants,

v.

ANCHORAGE SCHOOL DISTRICT, Appellee.

No. 4715.

Supreme Court of Alaska.

June 20, 1980.

---

Charles E. Tulin, Anchorage, for appellants.

Peter C. Partnow, Hellen & Partnow, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

Two teachers employed by the Anchorage School District appeal a superior court decision which dismissed, under Civil Rule 12(b)(6), their complaint against the School District for denial of a salary increase allegedly due them, for failure to state a claim upon which relief can be granted. The teachers also appeal the award of attorney's fees to the School District by the superior court. We affirm the superior court on both issues.

The dispute centers on the salary provisions of two contractual agreements negotiated between the School District and the Anchorage Education Association, authorized collective bargaining representative for all teachers employed by the School District. These agreements covered consecu-

tive periods of time. The first was negotiated to be in force from July 1, 1975, to June 30, 1977, and provided that a three percent "longevity pay" salary increase would be provided to each teacher upon completion of fifteen full years of service with the District. The second agreement was negotiated in June, 1977, to be in effect from July 1, 1977, to June 30, 1979. This second agreement terminated provisions for longevity pay for all teachers except those who had completed fifteen years of service in the District prior to the 1976–77 school term, but provided for an overall salary increase for all teachers. The two teachers in this appeal both completed fifteen years of employment with the District at the end of the 1976–77 school term. Thus, the second contract, negotiated subsequent to the time these teachers had completed the service which would entitle them to a salary increase under the first agreement, eliminated that right to an increase as part of a negotiation for salary increases for all teachers represented by the union.

The teachers' argument on appeal is that the provision in the first contract for longevity pay increases became a vested right upon completion of the specified term of service and therefore could not be bargained away in subsequent contractual negotiations between the District and the teachers' Union. We disagree.

The teachers do not dispute that the Anchorage Education Association was authorized to act as their bargaining agent in the 1977 contract negotiations, and the scope of bargaining power delegated to the teachers' union is not limited by the terms of either agreement. This court has held previously that the salary of teachers is a proper subject of collective bargaining under Alaska's statutes. *Kenai Peninsula Borough School District v. Kenai Peninsula Education Assoc.*, 572 P.2d 416, 422 (Alaska 1977).[1] The

1. AS 14.20.550 provides:
   *Negotiation with certificated employees.* Each city, borough and regional school board, shall negotiate with its certificated employees in good faith on matters pertain-

ing to their employment and the fulfillment of their professional duties.
   AS 14.20.560(a) authorizes the delegation of bargaining power over employment and professional duty matters to a union representative:

longevity pay provision in the 1975–77 agreement was but one component of the basic salary schedule for teachers contained in that contract. In fact, longevity pay was reduced in the 1975–77 agreement to three per cent from a five per cent rate specified in a previous contract. The complaining teachers, along with all other teachers in the district, received for the 1977–78 school year an overall raise in salary under the new agreement for 1977–79 greater than what teachers received for the 1976–77 year under the old agreement.

Authority in other jurisdictions supports the conclusion that privileges bargained for in agreements between an employer and a labor union may be subsequently given up in negotiations for a new contract, even for such items as seniority rights for which certain employees have already completed the performance which entitled them to the privilege under the old contract.[2] As stated in *International Longshoremen's & Warehousemen's Union v. Kuntz*, 334 F.2d 165, 171 (9th Cir. 1964):

> The settlement of a labor dispute, whether accomplished by amendment of the contract or by resort to an already existing contract provision, may ·affect rights which in other fields are regarded as vested and in a manner which would be deemed "ex post facto." But where the power to bargain is not limited by the contract and since "[c]ompromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation", [*Ford Motor Co. v. Huffman*, 345 U.S. at 338, 73 S.Ct. at 686] we

believe that when "vested rights" are impaired or extinguished in the course of the bargaining, any recourse by the person affected must then depend upon "a bad faith motive, an intent to hostilely discriminate" on the part of the bargaining representative.

No bad faith or discriminatory intent has been alleged against the union in this case. In *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), cited in the above case, the United States Supreme Court held that accrued seniority rights were within the scope of bargaining authority delegated to union representation under a federal statute, observing:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

345 U.S. at 338, 73 S.Ct. at 686, 97 L.Ed. at 1058.

The cases relied upon by the teachers in their argument do not support their position to any great degree. These cases for the most part concern removal of accrued contract rights unilaterally by an employer rather than renegotiation of rights through

---

When a majority of the certificated employees in a school district have designated an educational organization of their own choosing to bargain for them, the organization shall be recognized by the school board as the bargaining agent for all the certificated staff, except superintendents of schools. The membership of any such recognized educational organization shall be composed principally of those employed in the teaching profession in Alaska.

2. See *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Aeronautical Indus. Dist. Lodge 727 v. Campbell*, 337 U.S. 521, 526, 69 S.Ct. 1287, 1289, 93 L.Ed.

1513, 1518 (1949); *Trailmobile Co. v. Whirls*, 331 U.S. 40, 53 n.21, 67 S.Ct. 982, 988, n.21, 91 L.Ed. 1328, 1337 n.21 (1947); *Local 1251 Int'l Union of United Auto. Workers v. Robert Shaw Controls Co.*, 405 F.2d 29 (2d Cir. 1968); *International Longshoremen's & Warehousemen's Union v. Kuntz*, 334 F.2d 165, 171 (9th Cir. 1964); *Colbert v. Broth. of R. R. Trainmen*, 206 F.2d 9 (9th Cir. 1953), *cert. denied*, 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422 (1954); *Starke v. New York, C. & St. L. R. Co.*, 180 F.2d 569 (7th Cir. 1950); *Wheeler v. Brotherhood of Locomotive Firemen and Enginemen*, 324 F.Supp. 818, 824 (D.S.C.1971).

the collective bargaining process.[3] Some of these cases explicitly recognize that "vesting" of salary rights does not prohibit their alteration through later contractual agreement.[4] The single case cited which has held against alteration of accrued rights by subsequent agreement between union and employer, *Kolcum v. Board of Education of Woodbridge School District*, 335 A.2d 618 (Del.Super.1975), is distinguishable from this case in that it concerned a situation where teachers had actually accepted a contract and expended their own money in reliance upon a contractual agreement with the school district. The term in these teachers' employment contracts which the court held it was improper to alter by subsequent negotiation with the union was the district's promise to pay the third of three yearly installments for reimbursement for moving expenses incurred when the teachers began employment. *Id.* at 623.

■ Since we conclude that the change in these teachers' salaries brought about by the contract renegotiation in this case did not abuse any "vested" rights entitled to judicial protection, we believe the superior court's dismissal of the complaint for failure to state a claim for which relief can be granted was proper. Our disposition of this issue renders it unnecessary to consider the District's assertions that the teachers failed to exhaust available administrative remedies prior to bringing this lawsuit, and that judicial review of this dispute should be limited because it is subject to a contractual requirement of arbitration.

■ Regarding attorney's fees, we cannot agree with the teachers that the superior court abused its discretion in awarding

**3.** *See Zdanok v. Glidden Co.*, 288 F.2d 99 (2d Cir. 1961) (employees' rights to reinstatement continued after expiration of collective bargaining agreement because they vested during the term of the agreement; employer cannot unilaterally annul these rights); *Carlson v. School District No. 6 of Maricopa County*, 12 Ariz. App. 179, 468 P.2d 944 (1970) (school district cannot unilaterally reduce teacher's compensation to meet a budget limitation when to do so violates the terms of an existing contract); *A.B.C. Fed'n of Teachers v. A.B.C. Unified School Dist.*, 75 Cal.App.3d 332, 142 Cal.Rptr. 111 (1977) (school board cannot unilaterally delete an "extra pay" provision in a contract after teachers have signed the contract for the coming school year); *Richards v. Board of Educ.*, 21 Ill.2d 104, 171 N.E.2d 37 (1961) (same effect as to constitutional prohibitions against arbitrary reduction of salaries; school board can require continued education of teacher as condition precedent to salary increase); *Hardway v. Board of Educ. of Lawrenceville Township High School*, 1 Ill.App. 298, 274 N.E.2d 213 (1971) (school board has discretionary control over teachers' salaries, subject only to express limits in statute and constitutional prohibitions against arbitrary, discriminatory, or unreasonable action; school board misinterpreted statute requiring credit to be given to teachers for experience in other school districts, so the question of vested rights was not reached); *Madison County Bd. of Educ. v. Miles*, 173 So.2d 425 (Miss.1965) (a teacher or principal has a valuable right in a contract duly approved by school authorities; dismissal of principal by school board reversed because no "good cause" for removal provided for under statutes was shown); *Weber v. Board of Educ. of City of Trenton*, 127 N.J.L. 279, 21 A.2d 808 (1941) (under terms of statute granting a school board the power to make rules and regulations governing teacher employment, the board cannot unilaterally deny, in response to a financial crisis, scheduled increases in teachers' salaries, negotiated as part of an operative contract); *Frank v. Day's, Inc.*, 13 Wash.App. 401, 535 P.2d 479 (1975) (A right to payment of pension vests when contractual conditions for payment set out in agreement have been met under the terms of the contract, employer could not deny the pension after firing the employee for dishonesty); *Fox v. Board of Educ. of Doodridge County*, 236 S.E.2d 243 (W.Va.1977) (A teacher may not be lightly shorn of privileges for which he contracted; dismissal of teacher under statutory provision reversed).

**4.** In *Zdanok v. Glidden Co.*, 288 F.2d 99, 103 (2d Cir. 1961), the court stated:

> Of course, the employee owning the right, or his authorized union agent, could bargain away the employee's right.

In *Richards v. Board of Educ.*, 21 Ill.2d 104, 171 N.E.2d 37, 42 (1961), cited by Rouse for the contention that a school board's control over salaries is subject to constitutional prohibitions against arbitrary, discriminatory, or unreasonable action, the court observed:

> [P]ermancy of tenure given by the legislature to teachers carries with it no assurance against changes in salary. [citations omitted] . . . [T]enure status does not prevent a reduction in salary, provided reductions are uniform, or based upon some reasonable classification.

the amount of attorney's fees which it did to the School District. In our opinion, the teachers do not meet the criteria for the "public interest" exception to the normal rule permitting the discretionary award of attorney's fees to the prevailing party under Civil Rule 82(a).[5] *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974). At stake in this case were the rights of a few individuals to monetary benefits. These are not the type of interests which present a question of genuine public interest, litigation of which would be unduly discouraged by an award of attorney's fees to the prevailing party.[6] Since only about one-half of the attorney's fees requested by the District were awarded by the superior court in this case,[7] it is distinguishable from *Malvo v. J. C. Penney Co.*, 512 P.2d 575 (Alaska 1973) which held that an award of all attorney's fees requested by the prevailing party, including those incurred in pursuing unsuccessful claims, was an abuse of discretion in a case with public interest aspects. *Id.* at 587–88. *See also Juneau Education Ass'n v. City & Borough of Juneau*, 539 P.2d 704, 708–09 (Alaska 1975).

■ This case can also be distinguished from *Crisp v. Kenai Peninsula Borough School District*, 587 P.2d 1168 (Alaska 1978), in which this court held it to be an abuse of discretion to award *any* attorney's fees against a tenured teacher who appealed his dismissal from employment. That opinion emphasized that a tenured teacher has a statutorily guaranteed right to contest his dismissal in the courts, and noted that if a lesser interest than continued employment were at stake an award of attorney's fees might be justified. *Id.* at 1170 n.7. Salary benefits are not specifically protected by a statutory right to judicial review, and the three percent increase in salary sought here does not compare with the right to employment itself.

The judgment of the superior court is Affirmed.

BOOCHEVER, J., not participating.

---

5. Alaska R.Civ.P. 82(a) provides:
    (a) *Allowance to Prevailing Party as Costs.*
    (1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

    ATTORNEY'S FEES IN AVERAGE CASES

    | | | Contested | Without Trial | Non-contested |
    |---|---|---|---|---|
    | First | $2,000 | 25% | 20% | 15% |
    | Next | $3,000 | 20% | 15% | 12.5% |
    | Next | $5,000 | 15% | 12.5% | 10% |
    | Over | $10,000 | 10% | 7.5% | 5% |

    Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.
    (2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.
    (3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

6. In *Anchorage v. McCabe*, 568 P.2d 986, 991 (Alaska 1977), this court adopted general criteria indicative of whether a plaintiff has presented a question of genuine public interest:
    (1) the effectuation of strong public policies;
    (2) the fact that numerous people received benefits from plaintiffs' litigation success;
    (3) the fact that only a private party could have been expected to bring this action. Although this lawsuit was nominally a class action, there is no evidence that more than a few teachers similarly situated to the appellants would have benefited if the lawsuit had succeeded.

7. A total of $1500 in attorney's fees were eventually awarded against the two teachers compared to $2960 requested by the District.