[No. 52223-5.   En Banc.   July 10, 1986.]

LYLE BRADFORD, ET AL, *Appellants*, v. THE DATA
PROCESSING JOINT BOARD, *Respondent.*

*Thomas H. Grimm* and *Inslee, Best, Chapin & Doezie,
P.S.,* for appellants.

*Arthur D. Curtis, Prosecuting Attorney, Curt Wyrick,
Chief Civil Deputy,* and *Jerry F. King, City Attorney,* for
respondent.

PEARSON, J.—The principal issue in this case is whether, absent an agreement, a public employer whose employees vote to discontinue their participation in federal social security must make future contributions to a substitute retirement plan beyond the duration of the collective bargaining agreement, equivalent to the contributions formerly paid under the discontinued social security program. We hold, under the facts of this case, that a public employer is not required to make such future contributions.

In 1972, respondent Data Processing Joint Board was established under RCW 39.34 by an interlocal cooperation agreement between the City of Vancouver and Clark County to provide data processing and computer services to each governmental body. The agreement provided that employees of the City and the County would become employees of the new joint board. As a result of the agreement, appellants became employees of the new joint board.

Prior to the creation of the joint board in 1972, the City of Vancouver and Clark County entered into a voluntary agreement with their employees, pursuant to their collective bargaining agreement, whereby the City and County agreed to contract with the federal government pursuant to 42 U.S.C. § 418 and RCW 41.48 to obtain coverage under the federal social security act. The term of the collective bargaining agreement between appellants and the City and County ended in December 1981. Earlier in 1981, however, the State Old Age and Survivor's Insurance (OASI) office of the Department of Employment Security determined that, in establishing a new agency under the 1972 interlocal cooperation agreement, appellants should have voted to determine whether social security coverage would continue. In July 1981, the appellants voted to discontinue participation in social security.

By July 1982, OASI refunded to respondent a sum equal to the employee and employer contributions for a 3–year period beginning in 1978 and ending in July 1981. The respondent subsequently paid appellants all such *employee* contributions and offered to pay the appellants the *em–*

*ployer's* share of the contributions, but only if appellants would sign a hold harmless agreement relating to the period prior to 1978. Appellants refused to sign the release and, as a result, did not receive their share of respondent's contributions. Additionally, respondent did not offer to pay appellants a sum equal to what respondent would have contributed to social security for the period August 1 to December 31, 1981, the balance of the term of the collective bargaining agreement in effect at the time appellants withdrew from social security.

After expiration of the existing collective bargaining agreement, the parties negotiated for new agreements for 1982, 1983 and 1984. During these negotiations, appellants contended that under *International Ass'n of Firefighters, Local 2088 v. Tukwila,* 22 Wn. App. 683, 591 P.2d 475, *review denied,* 92 Wn.2d 1021 (1979), the respondent was obligated to continue pension contributions to a substitute plan beyond the duration of the collective bargaining agreement in an amount equivalent to the discontinued social security program. Respondent, on the other hand, believed that *Tukwila* only required it to negotiate in good faith with respect to future benefits, not to agree to provide such a benefit.

After numerous negotiations, the parties did enter into two new contracts for 1982 and 1983–84. The parties agreed in both contracts to reserve for court determination whether the employer had an obligation to contribute to a substitute plan equivalent to the discontinued social security program. As part of these new agreements, respondent agreed to provide additional life insurance and new long–term disability insurance for each employee as partial replacement for social security.

After negotiations failed with regard to future contributions, appellants brought suit in Clark County Superior Court to determine the exact nature of respondent's obligations. Both parties brought motions for summary judgment.

At the motion hearing on May 27, 1983, respondent agreed to pay appellants its refunded share of social security contributions for the period from 1978 to July 1981, without requiring appellants to sign a hold harmless agreement. Respondent also agreed to pay appellants the amount of contributions it would have paid to appellants for the period August 1 to December 1981, the remaining term of the 1981 collective bargaining agreement. Nevertheless, the trial court granted respondent's motion for summary judgment, ruling that under *Tukwila* respondent was not required to provide future contributions beyond the duration of the collective bargaining agreement equivalent to the discontinued social security program. According to the trial court, *Tukwila* only obligated respondent to negotiate in good faith as to future contributions. Appellants appealed to the Court of Appeals and the matter was transferred to this court for review pursuant to RAP 4.3.

I

As a preliminary matter, when reviewing an order granting summary judgment, an appellate court engages in the same inquiry as the trial court. *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). Thus, this court must decide whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. *Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 373, 610 P.2d 857, 621 P.2d 1293 (1980). The parties stipulated at trial that there were no material facts at issue which should defeat a motion for summary judgment, and waived the materiality of any facts that might be at issue. Accordingly, the trial court correctly concluded that no genuine issue existed as to any material fact. This court now must determine whether respondent is entitled to judgment as a matter of law.

II

The landmark case regarding pension payments to

municipal employees is *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956). In *Bakenhus,* this court rejected the view that the right to receive a pension arises only when all the conditions precedent to receiving it are fulfilled. We held that governmental pension programs granted employees a vested, contractual right in the pension plan upon the commencement of public service. *Bakenhus,* at 700.[1] The court also held that although pension rights may be altered prior to retirement, such modifications must be for the sole purpose of maintaining a flexible pension system. *Bakenhus,* at 701. Further, such modifications, where permitted, must be accompanied by a corresponding benefit. *Bakenhus,* at 702.

Against this background, the Court of Appeals decided *International Ass'n of Firefighters, Local 2088 v. Tukwila,* 22 Wn. App. 683, 591 P.2d 475, *review denied,* 92 Wn.2d 1021 (1979). The facts of *Tukwila* are nearly identical to the present case. The City of Tukwila entered into an agreement with its employees obligating the City to contribute to the federal social security system on behalf of all its fire fighters. The fire fighters learned they could terminate their participation in social security and have their contributions refunded. Once the fire fighters voted to terminate participation, the City ceased making contributions to a retirement plan, refused to refund the social security contributions, and refused to contribute to a substitute pension program.

The fire fighters initiated a lawsuit, seeking an order to compel the City to refund social security contributions and

---

[1]The contract theory of public employee pensions in *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956) has been consistently reaffirmed in Washington. *See, e.g., Wilder v. Wilder,* 85 Wn.2d 364, 367, 534 P.2d 1355 (1975); *Frank v. Day's, Inc.,* 13 Wn. App. 401, 404, 535 P.2d 479 (1975); *Sheppard v. Blackstock Lumber Co.,* 85 Wn.2d 929, 540 P.2d 1373 (1975); *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 468 P.2d 666 (1970); *Mulholland v. Tacoma,* 83 Wn.2d 782, 522 P.2d 1157 (1974); *Dorward v. ILWU–PMA Pension Plan,* 75 Wn.2d 478, 482–83, 452 P.2d 258 (1969); *Horowitz v. Department of Retirement Sys.,* 96 Wn.2d 468, 472, 635 P.2d 1078 (1981); *Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964); *Eisenbacher v. Tacoma,* 53 Wn.2d 280, 333 P.2d 642 (1958).

to resume contributions equal to social security payments to a qualified retirement plan. The trial court granted summary judgment on behalf of the fire fighters. On appeal, the City argued that it could discontinue contributions without providing a corresponding benefit for the duration of the collective bargaining agreement. The Court of Appeals disagreed, applying *Bakenhus* and its progeny. The court held that pension benefits, including social security, when agreed upon through the collective bargaining process, are contractual in nature, and thereby obligate the employer to make contributions in accordance with the terms and duration of the collective bargaining agreement. *Tukwila,* at 689. The court further held that any modification which reduced pension benefits prior to the natural expiration date of the collective bargaining agreement must be supplemented by a "corresponding benefit" for duration of the agreement. We agree with the analysis adopted in *Tukwila* and find its application of *Bakenhus* persuasive in the present case. We must now determine whether, upon termination of social security coverage, appellants are entitled to a "future corresponding benefit" beyond the duration of the collective bargaining agreement.

In its conclusion, the court in *Tukwila* stated:

> We therefore remand for modification of the judgment, to wit: that the City make the contributions ordered by the trial court . . . for the term of the parties' collective bargaining agreement. *Future obligations of contribution will have to be negotiated between the parties, but the City cannot discontinue contributions without providing a "corresponding benefit"* . . .

(Italics ours.) *Tukwila,* at 689.

Appellants contend the language "the City cannot discontinue contributions without providing a 'corresponding benefit'", requires respondent to provide a corresponding benefit for *years subsequent to 1981* equal to the benefits appellants had received prior to their withdrawal from social security. We disagree.

The court in *Tukwila* unequivocally stated that "[f]uture

obligations of contribution will have to be negotiated". The court does not state that an employer is required to provide a corresponding benefit for future obligations beyond the duration of the collective bargaining agreement. The language merely states that the City cannot discontinue contributions without providing a corresponding benefit. This language refers to the discontinuance of an already existing collective bargaining agreement.

Thus, based on the facts of this case, we hold that unless intended to maintain flexibility, any modification which detrimentally alters or reduces an already existing pension benefit program prior to the natural expiration date of the collective bargaining agreement must be accompanied by a corresponding benefit for the duration of the agreement. Respondent, however, is under no duty to provide a *future* corresponding benefit beyond the duration of the agreement; it is required only to negotiate in good faith over such future obligations. Accordingly, we affirm the trial court's order granting respondent's motion for summary judgment.

### III

Respondent raises an additional question concerning the validity of the *Tukwila* decision which we are compelled to address. Respondent argues that the court in *Tukwila* improperly considered social security benefits as contractual in nature. It relies on *Caughey v. Employment Sec. Dep't,* 81 Wn.2d 597, 503 P.2d 460, 56 A.L.R.3d 513 (1972) in which this court adopted the general rule enunciated by the United States Supreme Court in *Flemming v. Nestor,* 363 U.S. 603, 4 L. Ed. 2d 1435, 80 S. Ct. 1367 (1960), which held that social security benefits are not contractual in nature, but rather constitute benefits under a unique federal social insurance program.

We agree with respondent's contention that social security benefits ordinarily are not contractual in nature, but only to the extent that no contractual relationship exists between the federal government and the individual

employees covered by social security. In such an instance, "the rights created through participation are statutory rather than contractual and employees have no vested interest . . . in the usual sense." *Standing v. Department of Labor & Indus.*, 92 Wn.2d 463, 472, 598 P.2d 725 (1979).

However, in this case, unlike *Caughey*, social security benefits are contractual in nature, even though statutorily created. Prior to the creation of the joint board in 1972, the City of Vancouver and Clark County entered into a voluntary agreement with their employees, pursuant to their collective bargaining agreement, whereby the City and County agreed to contract with the federal government in accordance with 42 U.S.C. § 418 and RCW 41.48 to obtain coverage under the federal social security act. In our opinion, where the relationship involved is between the State and its employees, and participation in the social security program is pursuant to a collective bargaining agreement, the right created is contractual. Thus, appellants have a right to receive social security benefits in accordance with the terms and duration of the collective bargaining agreement.

## IV

Finally, we must determine if appellants are entitled to attorney fees under RCW 49.48.030, which authorizes the award of attorney fees in certain actions by employees against their employer for "wages" or "salary owed". Because respondent agreed at the trial court level to pay appellants the amount of the respondent's share of contributions to social security and the amount of contributions respondent would have paid into the OASI fund on behalf of appellants during the remaining months of the 1981 collective bargaining agreement, appellants argue that they should be awarded a judgment for "wages", entitling them to reasonable attorney fees in accordance with RCW 49.48-.030. Appellants have failed to present any authority which establishes that an employer's share of contributions to social security constitutes wages or salary owed. Regardless, we are not prepared to hold that this statute authorizes

attorney fees in the present situation.
The trial court is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.