[No. 19031-5-III.   Division Three.   December 19, 2000.]

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1789, *Respondent*, v. SPOKANE AIRPORTS, *Appellant*.

*Jeffrey A. Hollingsworth* and *Laura E. Mate* (of *Perkins Coie, L.L.P.*), for appellant.

*George R. Guinn* (of *Hawkins & Guinn, P.S.*), for respondent.

SCHULTHEIS, J. — For over 30 years, Spokane Airports (Airport), a municipal corporation, matched the social security and Medicare payments withdrawn from the monthly wages of its fire fighter employees. When the fire fighters, represented by the International Association of Firefighters, Local 1789 (Union), voted to opt out of the social security system, they demanded reimbursement of the funds withdrawn from their paychecks as well as the funds paid by Airport to social security and Medicare on their behalf. On a Union motion for summary judgment, the trial court applied *International Association of Firefighters, Local No. 2088 v. City of Tukwila*, 22 Wn. App. 683, 591 P.2d 475 (1979), and concluded that Union was entitled to the

social security and Medicare sums paid by Airport from 1995 through 1998, continuing to the expiration of the current bargaining agreement. Airport appeals, contending Union lacks standing to bring this action and arguing *Tukwila* and its progeny are distinguishable. We find that Union had associational standing to bring this suit. Further, finding that the analysis in *Tukwila* applies to these facts, we affirm.

## FACTS

In the early 1960s Airport began operating its own fire department. At that time it put the fire fighters, each of whom belonged to Union, under the same social security system that covered its other employees. Each employee paid 6.2 percent of his or her monthly salary for social security and 1.45 percent for Medicare. Airport matched these funds on behalf of the employees.

Eventually Union discovered that the fire fighters could withdraw from social security, and in March 1999 its members voted to do so. Union then filed suit against Airport for wrongful conversion, demanding reimbursement for the sums withheld from the fire fighters' paychecks for social security and Medicare, as well as the matching sums paid by Airport. Airport obtained reimbursement from the Social Security Administration for the funds withdrawn from the fire fighters' paychecks and this amount was returned to the employees. But Airport refused to reimburse the amounts it paid on the fire fighters' behalf.

Union moved for summary judgment in September 1999. It requested reimbursement for Airport's contributions to social security and Medicare from 1995 through 1998, and a continuing contribution to the fire fighters' retirement plan through the expiration of the current bargaining agreement. Citing *Tukwila* and *Bradford v. Data Processing Joint Board*, 106 Wn.2d 368, 722 P.2d 95 (1986), the trial court granted Union's motion. This appeal followed.

STANDING

■ Airport first contends Union lacks standing to bring this action for monetary damages. Although Airport raised the issue of standing in its answer to the complaint, it did not pursue the issue in its response to the motion for summary judgment. Generally, issues that are not argued before the trial court may not be reviewed on appeal. RAP 2.5(a). Because standing is a jurisdictional issue, however, it may be raised for the first time in appellate court. RAP 2.5(a); *Mitchell v. Doe*, 41 Wn. App. 846, 847-48, 706 P.2d 1100 (1985).

■ An association such as Union has standing to bring suit on behalf of its members if it satisfies three elements: (1) its members would have standing to sue in their own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). In the usual case, the association seeks a declaration, injunction, or some other form of prospective relief. Because these remedies will inure to the benefit of the members of the association who are actually injured, without requiring individualized proof, they are properly pursued by the association even when it does not allege monetary injury to itself nor assignment of its members' damage claims. *Warth v. Seldin*, 422 U.S. 490, 515, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Ironworkers Dist. Council of the Pac. N.W. v. Univ. of Wash. Bd. of Regents*, 93 Wn. App. 735, 740-41, 970 P.2d 351 (1999). In *Ironworkers*, Division One extrapolated from the federal decisions in *Warth* and *Hunt* that an association will never have standing to seek monetary damages on behalf of its members. The rationale behind this bright-line rule is that

whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief

in damages, each member . . . who claims injury as a result of respondents' practices must be a party to the suit, and [the association] has no standing to claim damages on his behalf.

*Warth*, 422 U.S. at 515-16.

Here, Union brought a complaint for conversion, seeking return of the funds deducted from its members' paychecks, return of the matching funds paid by Airport, attorney fees and costs, and "such other relief as the Court deems proper." In its motion for summary judgment, Union requested a refund "to the employees, along with all interest accrued," of all contributions made to social security and Medicare for the years 1995 through 1998. Additionally, Union asked the court to order Airport to continue to contribute the amount of its matching funds to each fire fighter's retirement plan until the end of the current bargaining agreement. To the extent Union seeks return of funds Airport has already paid to social security and Medicare, it is seeking monetary damages. The request for the court to order continued payments for the balance of the bargaining agreement is a request for prospective relief. Strict adherence to the federal prohibition against an association suing for monetary damages on behalf of its members would bar Union's claim for at least the refund.

The federal bright-line rule against associational suits for monetary damages arises from the third prong of the test for associational standing: the requirement that neither the claim nor the relief requires the participation of the individual members of the association. Federal standing requirements are based primarily on subject matter jurisdiction (the "cases or controversy" requirement) under article III, section 2 of the United States Constitution. *Warth*, 422 U.S. at 498. The first two prongs of the test for associational standing ensure that a suit will meet the Article III requirements for injury in fact, causal connection to the defendant's conduct, and redressability. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996). The third prong, on the other hand, is "prudential," meaning it

is a judicially self-imposed limit on federal jurisdiction, not constitutionally mandated, and employed for "administrative convenience and efficiency[.]" *Id.* at 551, 557. One of the dangers the third prong seeks to address is the risk that a case may be litigated to the damages stage only to find that the plaintiff lacks detailed records or the evidence necessary to show the injury with sufficient specificity. *Id.* at 556. The third prong may also protect against the risk that damages recovered by the association will not find their way into the pockets of the individual members. *Id.* Ultimately, however, the test is whether the circumstances of the case and the relief requested make individual participation of the association's members indispensable. *Warth*, 422 U.S. at 511.

There is no question here that Union is the duly authorized collective bargaining representative of the Airport's fire fighters. As such, Union is the fire fighters' associational representative. *See Brown Group*, 517 U.S. at 556 n.6. The fire fighters have standing to sue in their own right for refunds of Airport's social security and Medicare payments (the first prong). Union asserts that these funds are part of the total compensation package. Protection of the fire fighters' rights to the funds is germane to Union's purpose (the second prong). But application of the third prong to Union's lawsuit is not so straightforward. The damages claim asserted is common to Union's entire membership for the period of the current collective bargaining agreement and is shared by all members to the same degree (the same percentage of each paycheck). In determining that Airport is liable for all the funds contributed to social security and Medicare for the fire fighters from 1995 through 1998, the trial court did not need evidence from any of the individual fire fighters. However, each fire fighter's recovery under this judgment will require records showing the extent of his or her employment during these years and his or her actual wages during this period. We assume that these records are easily produced. Further, we know that Airport already has these records because it has

obtained and refunded to the fire fighters the social security and Medicare payments that were withdrawn from their paychecks during this period. Airport's contribution (the matching fund) will be identical to the amounts already refunded to each fire fighter.

In light of the fact that the third prong of the test for associational standing is not constitutionally mandated, but is a rule of administrative convenience and efficiency, we find that Union survived the test. Each Union member gained prospective as well as retrospective relief from Union's lawsuit, and the measure of that relief is at Airport's fingertips.[1] Under these circumstances, Union's associational representation of the individual fire fighters was the most convenient and efficient method of litigating these issues. In so holding, we recognize that our court is diverging from the federal bright-line rule adopted by Division One in *Ironworkers*, 93 Wn. App. at 740-41.

### APPLICATION OF *TUKWILA*[2]

In rendering its decision granting summary judgment to Union, the trial court noted that it saw no "factual distinction between the case at bar and *Tukwila.*" Airport contends the decision in *Tukwila* rests on a negotiated contractual agreement between the employer and the union that is not present in the case before us. At a minimum, Airport argues, the question whether the social security payments were included in the collective bargaining process is a

---

[1] In *Local 1035, International Brotherhood. of Teamsters v. Pepsi-Cola Allied Bottlers, Inc.*, 83 F. Supp. 2d 301, 304 (D. Conn. 1999), the plaintiffs sought all wages and benefits lost as a result of the defendant's illegal conduct. While noting that the "dominating motive" for the lawsuit was to win monetary damages, the district court found that equitable relief was also within the scope of the litigation. On that basis, the court found that the relief did not necessarily require the participation of individual members in the lawsuit, and held that the Teamsters had standing. In the present case, Union sought contributions Airport had already made to social security and Medicare (monetary damages), an order for Airport to continue making such contributions to qualified retirement plans for the remainder of the bargaining agreement (prospective relief), and "such other relief as the Court deems proper" (including equitable relief). Under the rationale of *Teamsters*, Union would have standing because it sought more than monetary damages.

[2] *Int'l Ass'n of Firefighters, Local No. 2088 v. City of Tukwila*, 22 Wn. App. 683, 591 P.2d 475 (1979).

question of material fact precluding summary judgment. We begin our analysis with an examination of the *Tukwila* decision.

In *Tukwila*, the International Association of Firefighters, Local No. 2088, filed suit on behalf of its members, who decided in 1976 to opt out of the social security system.[3] For years, the City of Tukwila had contributed to social security on behalf of the fire fighters. As in the present case, Tukwila matched the funds withdrawn from the fire fighters' paychecks for social security. Also, as in the present case, Tukwila reimbursed the fire fighters' refunded social security payments after the fire fighters opted out of the federal program, but refused to reimburse its matching contributions and refused to continue to make those contributions to a pension fund. On summary judgment, the trial court ordered Tukwila to pay to each fire fighter's retirement plan the percentage of his or her monthly wages that had formerly been paid to social security. Tukwila appealed, contending there was a disputed issue of material fact regarding whether the collective bargaining agreement contractually obligated it to contribute to another pension plan. *Tukwila*, 22 Wn. App. at 686.

■■ On appeal, the court found that a pension granted to an employee is not a gratuity, but a deferred compensation for services rendered. *Id.* at 687. Washington law is clear that a pension agreement is contractual in nature, and once an employee has a vested right in a pension or retirement system, the employer cannot alter that system to the employee's detriment without corresponding benefit. *Id. Tukwila* holds that pension plans are necessarily included in the total compensation package found in private collective bargaining agreements. As the court notes, no pension plan or social security payments are addressed in the collective bargaining agreement in *Tukwila*. *Id.* at 688 n.2. Neither are they addressed in the collective bargaining agreement in the present case. But the employer's contrac-

---

[3] The issue of the union's standing to bring this suit was not raised in *Tukwila*.

tual obligation to contribute to a worker's retirement plan is inferred, because the employer is obligated to pay a pension, once established. *Id.* at 687-88.

Airport contends the basis for the decision in *Tukwila* is the court's finding that the past payments to social security "were properly considered compensatory during arbitration proceedings between the City and the Union in 1976." *Id.* at 688. On the contrary, *Tukwila* based the obligation to pay pension benefits on a theory of implied contract, independent of specific negotiations. Key to the court's holding is this language:

> "In this jurisdiction, pensions or retirement programs, whether public, established by collective bargaining, or voluntarily employer-funded, constitute deferred compensation for services rendered and are designed to promote continued and faithful service to the employer and economic security to employees. A pension agreement is contractual in nature, and the employer is obligated to pay the pension if an employee fulfills the specific conditions of the agreement."

*Tukwila*, 22 Wn. App. at 687 (quoting *Frank v. Day's, Inc.*, 13 Wn. App. 401, 404, 535 P.2d 479 (1975)).

Airport further notes that the Supreme Court in *Bradford v. Data Processing Joint Board*, 106 Wn.2d 368, 373, 722 P.2d 95 (1986), describes *Tukwila* as holding "that pension benefits, including social security, *when agreed upon through the collective bargaining process*, are contractual in nature, and thereby obligate the employer to make contributions in accordance with the terms and duration of the collective bargaining agreement." (Emphasis added.) In *Bradford*, the employees and their employer, the City of Vancouver, entered into a collective bargaining agreement that included coverage under federal social security. *Id.* at 369. As in *Tukwila*, the employees later voted to opt out of social security. Vancouver agreed to refund a sum equal to the employee and employer contributions during the current collective bargaining agreement contract, but refused during negotiations for the subsequent contract to continue funding the new pension plan. The Supreme Court affirmed

the trial court's holding that Vancouver was under no duty to provide a future corresponding benefit beyond the duration of the collective bargaining agreement, and was required only to negotiate in good faith over future obligations. *Id.* at 374.

■ ■ The fact that the employer and employees in *Bradford* specifically included social security in the collective bargaining agreement distinguishes this case from both *Tukwila* and the present case. Accordingly, *Bradford*'s characterization of the holding in *Tukwila* as supporting the contractual nature of pension benefits "agreed upon through the collective bargaining process" is more a comment on the facts in *Bradford* than a summary of the holding in *Tukwila*. As mentioned above, *Tukwila* specifically noted that neither social security nor any other pension plans were mentioned in the collective bargaining agreement reached by its parties. Further, the court rejected the employer's argument that its obligation to pay must be part of the collective bargaining agreement. *Tukwila*, 22 Wn. App. at 686-87.

The basis for the decision in *Tukwila* as well as for the decision in the present case is not the actual bargain of the parties reflected in the collective bargaining agreement, but the inferred contract created by the employer-employee relationship to provide a pension plan as deferred compensation. The existence of Airport's former agreement to match the social security payments is not in dispute. Airport complied with that obligation for many years. It cannot now refuse to comply simply because the form of the pension plan has been altered. As in *Tukwila*, the employer is obligated to pay an amount equal to its earlier social security contributions. On review of the affidavits and pleadings here, we find no issue of material fact regarding the existence of Airport's obligation to pay a contribution to the fire fighters' pension plan, whatever forms the pension plan takes. Accordingly, we must affirm the trial court's summary judgment. *Baker v. Schatz*, 80 Wn. App. 775, 782, 912 P.2d 501 (1996).

■ Finally, we note that Airport's insistence that Union was required under the collective bargaining agreement to exhaust contractual remedies mischaracterizes the nature of the obligation to pay for the fire fighters' pensions. Airport's duty to provide the fire fighters a corresponding benefit once the fire fighters opted out of social security and Medicare is contractual *in nature* as opposed to a specific contractual term in the collective bargaining agreement. *Tukwila*, 22 Wn. App. at 687 (quoting *Frank*, 13 Wn. App. at 404). As an inferred contractual obligation, the duty to pay does not arise directly from the collective bargaining agreement; therefore, Union was not required to pursue the grievance process contained in the agreement. *See Kamaya Co. v. Am. Prop. Consultants, Ltd.*, 91 Wn. App. 703, 713-14, 959 P.2d 1140 (1998) (the duty to submit to arbitration must arise from the contract itself).

ATTORNEY FEES

■ Union requests attorney fees "pursuant to applicable RAP rules." Airport makes no response and does not request fees. No fees were awarded by the trial court. Because Union fails to support its request with argument or authority, we decline to consider its request. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 456, 832 P.2d 1303 (1992) (the appellate court may refuse to engage in conjectural resolution of issues presented but not briefed).

Affirmed.

SWEENEY and KATO, JJ., concur.

Review granted at 143 Wn.2d 1019 (2001).