[No. 1149-2.    Division Two.    May 6, 1975.]

DOROTHY L. FRANK, *Appellant*, v. DAY'S, INC., et al, *Respondents*.

*Edward M. Lane* and *Murray, Scott, McGavick, Gagliardi, Graves, Lane & Lowry,* for appellant.

*Earl D. Mann* and *Mann, Copeland, King, Anderson, Bingham & Scraggin,* for respondents.

PETRIE, A.C.J.—Dorothy L. Frank appeals from a judgment dismissing her complaint for accumulations allegedly due her under a pension trust fund established by her employer. The pivotal issue is whether or not the pension agreement's forfeiture clause was applicable to her after her participation in the fund had terminated. We hold that it was not and, therefore, reverse.

Continuously from September 20, 1951, to October 15, 1971, Miss Frank was employed by Day's, Inc., as a bookkeeper. From 1967 to October 1971 she also kept the books of an employee loan fund, which was established by Day's, Inc., and funded by profits from vending machines installed by the company in the employee lunchroom. She received no additional compensation for this work. From January 1970 to October 1971, she made unauthorized loans from this fund to herself, concealing the fact on the books and on an annual recapitulation by charging the loans to fictitious names or to other employees and by forging her superior's initials. The total amount of the loans she made to herself, including the one recorded in her name in the amount of $200, was $4,400. By November 28, 1971, she had repaid $730, making a balance due of $3,670. In anticipation of an impending audit, on October 15, 1971, Miss Frank confessed these unauthorized loans to her superior and her employment was forthwith terminated.

On August 1, 1952, Day's adopted a retirement trust agreement, which as amended and restated on June 1, 1962, was designed "to aid in providing economic security to qualified employees . . . to fullest practical extent, as a reward for long-term, faithful and efficient services to the Company." Employees paid on a salary basis and who had been regularly and continuously employed for one year were eligible to participate. The trust was funded by employer contributions and voluntary employee contributions. Other provisions of the agreement relevant to this appeal

are the following. Article 9 (1) provided that *participation* would *terminate* upon death, disability, reaching the age of 65 or prior retirement, voluntary or involuntary termination or *completion of 20 years with the company* (unless the employee elected prior to commencement of the 19th year of service to continue participation).

Article 9 (2) provided:

> Any *participant* who is *discharged* from the service of the Company by reason of conviction of a felony or misdemeanor, or *upon confession of dishonesty* or breach of trust in the performance of his duties, shall thereby forfeit his right to participation in any of the Trust Fund referred to herein, and *shall forfeit all credit standing to his account* in the Trust Fund, except that such participant shall be entitled to receive an amount equal to the total of all amounts paid into the Trust by such participant as a voluntary contribution to his account.

(Italics ours.)

Article 9 (3) (b) provided in part:

> Any *participant terminating his participation* for reasons other than [death, disability, retirement at or after age 65 or forfeiture] shall have a *vested interest* in the Trust Fund equal to that percentage of his credit in the Trust Fund as of the date of such termination . . . as provided in the following table:

| Complete Years of Continuous Service | Percent of Credit in Trust Fund |
|---|---|
| Less than 4 years | None |
| 4 to 6 years | 25% |
| 7 to 9 years | 35% |
| 10 to 12 years | 45% |
| 13 to 15 years | 60% |
| 16 to 19 years | 75% |
| 20 years and over | 100% |

(Italics ours.)

Miss Frank was a qualified employee who participated in the fund until September 21, 1971. Because she had not earlier elected to continue participation after her 20th year, on that date her participation terminated pursuant to article 9 (1). At a meeting of November 8, 1971, the trustees of

the fund invoked the forfeiture clause of the agreement— article 9 (2)—and withheld the amounts credited to her account.

■ Whether the trustees' action was permitted under the agreement is a matter of contract interpretation. In this jurisdiction, pensions or retirement programs, whether public, established by collective bargaining, or voluntarily employer-funded, constitute deferred compensation for services rendered and are designed to promote continued and faithful service to the employer and economic security to employees. A pension agreement is contractual in nature, and the employer is obligated to pay the pension if an employee fulfills the specific conditions of the agreement. The rules of contractual construction are to be applied. *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 468 P.2d 666 (1970); *Dorward v. ILWU-PMA Pension Plan*, 75 Wn.2d 478, 452 P.2d 258 (1969); *Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956).

■ We turn first to the basic rule of contract construction. When the terms of a contract are not ambiguous, the contract's meaning is to be determined from the language alone without recourse to other aids. *Jacoby v. Grays Harbor Chair & Mfg. Co.*, *supra*. We find, for the reasons stated below, that the applicable language of Day's retirement fund agreement is unambiguous. Therefore, neither the employee misconduct nor the forfeiture clause in this agreement is controlling.

The language of the sections of the agreement concerning termination of participation and forfeiture is unequivocal. Under article 9 (2) forfeiture applies only to *participants* who are discharged for the reasons stated. Miss Frank was discharged on October 15, 1971. On that date she was no longer a participant because under article 9 (1) her participation in the plan had terminated by virtue of the fact that she had served 20 years and did not elect to continue her participation. Because she was no longer a participant at the time of her discharge she was not subject to the forfeit-

ure provision. Therefore, article 9(3) fully applies to her and she was entitled to a "vested interest" in 100 percent of the amount credited to her account in the fund.

█ In briefs and oral argument, both parties have set forth their differing concepts of vesting. The term "vesting" embodies several concepts and has several different meanings. An employee has a vested right in a pension or retirement *system* upon becoming a qualified employee, and that system cannot be altered to his detriment without corresponding benefit to him. *Dorward v. ILWU-PMA Pension Plan, supra; Bakenhus v. Seattle, supra.* A vested right *to payment*, however, does not arise until the contractual conditions for payment set out in an agreement have been met. *Jacoby v. Grays Harbor Chair & Mfg. Co., supra; DeRevere v. DeRevere,* 5 Wn. App. 741, 491 P.2d 249 (1971). In order to attain a vested right to payment under Day's pension agreement, an employee's participation must terminate and the termination must not be the result of the application of the forfeiture clause. Assuming these conditions are fulfilled, then the *amount* of payment is dependent upon when the participation terminated. If participation terminated for a reason other than death, disability or retirement at or after age 65, the amount of payment depends upon the number of years of service. One whose participation terminates after 10 but less than 12 years, for example, is entitled to 45 percent of the amount credited to his account. Thus, the term "fully vested" is misleading. Though entitled to only 45 percent of his credits, an employee who terminates participation after 10 years does have a *fully vested right* to that percentage, and the employer is bound to pay it after the right to payment accrues.

Miss Frank's vested right to payment accrued on September 21, 1971, because she had fulfilled the contractual terms for payment—service for the requisite number of years and termination for one of the nonexcepted reasons. Only after this right to payment had accrued was she discharged. If she had been discharged for any of the reasons

stated in the forfeiture clause any time through the last day of her participation in the plan, a valid forfeiture clause would have precluded her from recovering because she would not have met *all* the terms of the agreement.

The judgment is reversed.

PEARSON, J., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied July 16, 1975.