45 P.3d 186 (2002)
INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1789, Respondent,
v.
SPOKANE AIRPORTS, a municipal corporation, Petitioner.
No. 70667-1.
Supreme Court of Washington, En Banc.
Argued September 13, 2001.
Decided April 25, 2002.
*187 Perkins, Coie, Jeffrey Alan Hollingsworth, Seattle, for Petitioner.
Hawkins & Guinn, George Roy Guinn, Spokane, for Respondent.
ALEXANDER, C.J.
We must decide if the Court of Appeals erred in concluding that the International Association of Firefighters, Local 1789 (Union), had standing to maintain this lawsuit for monetary relief on behalf of its members and that Union was not required, prior to bringing the suit, to engage in the arbitration process provided for in the collective bargaining agreement between it and Spokane Airports (Airport), a municipal corporation. If we answer these questions in the affirmative we must also decide if the Court of Appeals correctly concluded that the trial court did not err in granting a summary judgment to Union requiring Airport to refund contributions it made to its employees' social security and Medicare accounts from 1995 through 1998, and to continue contributing to these employees' accounts for the duration of the collective bargaining agreement. We affirm the Court of Appeals on all issues, concluding that Union had standing to bring this suit on behalf of its members, that it was not required to submit the dispute to arbitration, and that Airport was obliged by the compensatory nature of the social security and Medicare contributions in this employment relationship to refund the employer contributions from 1995 through 1998 and continue to fund the employees' pension plan *188 for the duration of the collective bargaining agreement.

I.
In 1962, Airport, which operates its own fire department at the Spokane International Airport, contracted with the federal government in order that its fire department employees could obtain social security coverage. Consequently, each of its employees, all of whom were Union members, thereafter paid 6.2 percent of their wages into a social security account and 1.45 percent of their salary into a Medicare account. Airport matched the contributions of its employees.
On March 9, 1999, the employees, by means of Union referendum vote, exercised their right to opt-out of the social security plan. Airport then obtained refunds from the federal government for the amount of money each fire department employee paid into a social security and Medicare account during the period 1995 through 1998 and for Airport's matching contributions.[1]
Union brought this suit against Airport in Spokane County Superior Court, on behalf of the fire department employees, alleging that Airport "wrongfully ... convert[ed] ... those refunds" of the employees' money. Clerk's Papers (CP) at 5. It demanded that Airport reimburse the employees for the social security and Medicare taxes that had been withheld from the employees' paychecks between the years 1995 through 1998. Union also asked that the matching contributions that Airport paid into its employees' social security accounts be paid over to it for the benefit of the employees. Although Airport eventually returned to the employees the funds that had been withheld from their paychecks for social security and Medicare coverage, it refused to pay over to Union the matching payments it paid into the employees' accounts from 1995 to 1998.
Union moved for a summary judgment requesting reimbursement by Airport of "[a]ll contributions to Social Security and Medicare for the years 1995 through 1998, [for] ... the employees for whom they were contributed." CP at 16. It also sought a judgment requiring Airport
to continue to contribute to each individual firefighter's qualified retirement plan, of plaintiffs' choosing, in the amount of 6.2% and 1.45% of each employee's monthly wages for each month the defendant failed to make such payments from and after March 9, 1999, until the expiration of the current bargaining agreement.[2]
CP at 85. The trial court granted Union's motion. Airport appealed to the Court of Appeals, Division Three, which affirmed the trial court. We then granted Airport's petition for review.

II.
Airport contends that Union lacked standing to maintain this suit for monetary relief on behalf of its members.[3] In support of this contention it cites Ironworkers District Council v. University of Washington Board of Regents, 93 Wash.App. 735, 970 P.2d 351 (1999). In the Ironworkers case, Division One of the Court of Appeals adopted a position *189 consistent with that taken by many federal courts, to wit: that "an organization does not have standing to invoke the court's remedial powers on behalf of its members where ... the organization seeks damages and yet alleges neither monetary injury to itself nor assignment of its members' damage claims." Ironworkers, 93 Wash.App. at 741, 970 P.2d 351 (citing Warth v. Seldin, 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In concluding that Union had standing here, Division Three indicated that it was "diverging from the federal bright-line rule adopted by Division One in Ironworkers "for the practical reason that "associational representation of the individual fire fighters was the most convenient and efficient method of litigating these issues." Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports, 103 Wash.App. 764, 771, 14 P.3d 193 (2000), review granted, 143 Wash.2d 1019, 25 P.3d 1019 (2001).
We are called upon to determine whether we should approve the rule set forth in Ironworkers or instead recognize, as Division Three did here, that an employee's organization is not precluded from bringing a suit for monetary damages on behalf of its members simply because it fails to assert that the association suffered monetary injury or that it had an assignment of its members' claim. If we adopt the latter position, we must also decide if the Court of Appeals was correct in concluding that the Union should be granted standing under the circumstances of this case.
An association has standing to bring suit on behalf of its members when the following criteria are satisfied: (1) the members of the organization would otherwise have standing to sue in their own right; (2) the interests that the organization seeks to protect are germane to its purpose; and (3) neither claim asserted nor relief requested requires the participation of the organization's individual members. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), cited with approval in Save a Valuable Env't v. City of Bothell, 89 Wash.2d 862, 576 P.2d 401 (1978). The first two criteria are easily established. We say that because the individual Union members clearly had standing to sue in their own right since the contributions Union seeks to have returned were made by Airport for the accounts of Airport's employees and as a part of the employees' total compensation package. Furthermore, as the collective bargaining agreement between Airport and Union makes clear, the purpose of Union, as the exclusive bargaining agent of its members, is to "maintain harmonious relations" with Airport and to "establish proper and equitable standards of wages, hours and other conditions of employment." CP at 25. Protection of its members' retirement accounts is germane to those purposes.
The question of whether the third criteria has been shown is more troublesome. In addressing that question we take note of the fact that Union is seeking monetary damages and not injunctive relief. Monetary damages are distinguishable from injunctive relief, in that injunctive relief generally benefits every member of an employee association equally whereas the amount of monetary damages an employee suffers may vary from employee to employee. See Warth, 422 U.S. at 515, 95 S.Ct. 2197. It is primarily for this reason that federal courts have not accorded standing to an association to seek monetary damages on behalf of its members if it has not alleged an injury to itself or received an assignment of its members' damage claim. See, e.g., Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp., 801 F.Supp. 684 (S.D.Fla.1992); United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am., 919 F.2d 1398 (9th Cir. 1990); Telecomms. Research & Action Ctr. v. Allnet Communication Servs., Inc., 806 F.2d 1093 (D.C.Cir.1986).[4] Central to the holdings in the aforementioned cases is the concern that the third criteria is not established because "claims for monetary relief necessarily *190 involve individualized proof and thus the individual participation of association members." Ins. Corp. of Am., 919 F.2d at 1400. Airport's challenge to Union's claim of standing focuses on this prong of the Hunt test.
Unlike the third prong of the test, the first two prongs are constitutional in that they ensure that article III, section 2's "case or controversy" requirements are satisfied. United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). The third prong is not, however, constitutionally based and is judicially self-imposed for "administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." United Food & Commercial Workers Union Local 751, 517 U.S. at 557, 116 S.Ct. 1529. Division Three observed this distinction in holding that the ultimate question is "whether the circumstances of the case and the relief requested make individual participation of the association's members indispensable." Spokane Airports, 103 Wash.App. at 770, 14 P.3d 193 (citing Warth, 422 U.S. at 511, 95 S.Ct. 2197).
Because the rule enunciated by Division One in Ironworkers and many federal courts is judicial and not based on constitutional requirements, we are not required to give it substantial deference. Instead, we find ourselves attracted to the approach taken by Division Three to the effect that there are instances where the lack of individual participation by an association's members is not fatal to the association's standing because the amount of monetary damages sought on behalf of those members is certain, easily ascertainable, and within the knowledge of the defendant. In our judgment, this pragmatic view is preferable to a rule that serves to automatically deny standing to an association that seeks monetary damages on behalf of its members without alleging that it has been injured or that it has an assignment of the members' claim. The rule enunciated by Division Three in this case is, in our view, entirely reasonable and ensures fairness in cases where an individual association member's participation is not necessary to prove the damages that are asserted on behalf of the members by the association. In sum, Division Three's analysis affords a practical and sensible remedy to individual members who belong to an employee association and, perhaps, lack the means to bring a lawsuit on his or her own behalf. See Save a Valuable Env't, 89 Wash.2d at 867, 576 P.2d 401 (In determining associational standing courts consider the "individual who is one of many harmed ... [and who] may be unable to afford the costs of challenging the action himself."). If we reached the result advanced by Airport we would likely burden individual members of the employee association economically and would almost certainly burden our courts with an increased number of lawsuits arising out of identical facts. In short, we see little sense in an ironclad rule that has the effect of denying relief to members of an association based upon an overly technical application of the standing rules.
Having concluded that Union is not precluded from bringing this lawsuit on behalf of its members solely because Union sought monetary relief, we must next determine whether, under the facts of this case, the participation of Union's individual members was required. Here the record shows that the amount of monetary relief requested on behalf of each employee is certain, easily ascertainable, and within the knowledge of Airport. In that regard we note that Airport has already obtained and refunded to the employees the amounts that represent their individual contributions. Because Airport matched these amounts dollar for dollar, the exact amount of relief due each individual employee is known. Thus, we are satisfied that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Accordingly, we agree with the Court of Appeals' conclusion that Union had standing to bring this lawsuit on behalf of its members.

III.
Airport also asserts that the collective bargaining agreement required Union to arbitrate the dispute between it and Airport and that because it did not, Union is precluded from bringing this action. In support of this assertion Airport notes that the collective *191 bargaining agreement provides that "[g]rievances or disputes ... involving interpretation or application of [the agreement] shall be settled" through the grievance and arbitration procedures set forth in the agreement. CP at 36. Airport contends that the word "shall" indicates the mandatory nature of this portion of the agreement. While it is true that "shall" generally denotes that an obligation is mandatory, the duty to arbitrate a dispute must be founded in the contract itself. See W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco, 47 Wash. App. 681, 683, 736 P.2d 1100 (1987) (citing AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Thus, to reach the result that Airport advocates, we must conclude that its obligation to the fire fighters arises from the collective bargaining agreement. As we observe below, however, the Airport's obligation to provide the fire fighters with a corresponding benefit after they opted-out of the social security and Medicare system is not an obligation that arises from the collective bargaining agreement. The obligation, rather, flows from the compensatory nature of the social security benefits in this employment relationship. Consequently, we conclude that Union was not required to submit this dispute to arbitration.

IV.
Having concluded that Union has standing to bring this action on behalf of its members and that it was not required to exhaust the arbitration process, we must next determine if the trial court correctly granted summary judgment in Union's favor. In making that judgment, we must determine whether Airport is obliged to (1) refund the matching contributions it made from 1995 through 1998; and (2) fund the employees' pension plan for the duration of the collective bargaining agreement, which expired on December 31, 2000. Airport asserts that it is not obligated to do either. Its primary argument in support of that position is that the trial court erred in relying upon International Association of Firefighters, Local 2088 v. City of Tukwila, 22 Wash.App. 683, 591 P.2d 475, review denied, 92 Wash.2d 1021 (1979). As a secondary argument, Airport contends that the question of whether the social security and Medicare payments were included in the collective bargaining agreement is, at a minimum, a factual question and, thus, not resolvable on summary judgment.
The landmark case regarding characterization of pension and retirement payments for the benefit of municipal employees is Bakenhus v. City of Seattle, 48 Wash.2d 695, 296 P.2d 536 (1956). In that case we said that "a pension granted to a public employee is ... deferred compensation for services rendered." Bakenhus, 48 Wash.2d at 698, 296 P.2d 536. Consequently, we held that governmental pension programs extend to employees a vested contractual right in the pension plan upon commencement of public service. The contract theory announced in Bakenhus regarding public employee pensions, we determined, is constitutionally grounded in that Washington Constitution article VIII, section 7 prohibits municipal corporations from making gratuitous transfers of money. This theory has received overwhelming acceptance in Washington courts. See, e.g., Horowitz v. Dep't of Ret. Sys., 96 Wash.2d 468, 472, 635 P.2d 1078 (1981); Wilder v. Wilder, 85 Wash.2d 364, 367, 534 P.2d 1355 (1975); Eisenbacher v. City of Tacoma, 53 Wash.2d 280, 333 P.2d 642 (1958).[5] Thus, we have consistently held that any alterations in pensions that reduce benefits prior to the natural expiration date of an employment relationship must be supplemented by a corresponding benefit for the duration of the agreement. Bradford v. Data Processing Joint Bd., 106 Wash.2d 368, 372, 722 P.2d 95 (1986); Bakenhus, 48 Wash.2d 695, 296 P.2d 536.
Citing to our decision in Caughey v. Employment Security Department, 81 Wash.2d 597, 503 P.2d 460 (1972), in which we adopted the general rule enunciated by the United *192 States Supreme Court in Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the dissent asserts that "social security benefits do not fall within the Bakenhus rule that `payments under government pension plans are a form of deferred compensation for past services rendered to the employer.' "Dissent at 197 (emphasis omitted). We do not believe that Caughey applies to the case before us. Indeed, in Bradford, we indicated that social security benefits fall outside of Caughey where the employer and the employee group properly consider those benefits compensatory. More specifically, we stated that "in this case, unlike Caughey, social security benefits are contractual in nature, even though statutorily created." Bradford, 106 Wash.2d at 375, 722 P.2d 95 (emphasis added). We reached this conclusion because we "agree[d] with the analysis adopted in Tukwila and find its application of Bakenhus persuasive in the present case." Id. at 373, 722 P.2d 95. Accordingly, we find it appropriate to first analyze Tukwila prior to an extended discussion of Bradford.
In Tukwila, as in the instant case, a union[6] brought suit on behalf of its members against an employer, the City of Tukwila, following a vote by the union members to opt-out of a social security plan which was partially funded by the City. The union requested that the City be required to continue contributing into a substitute pension plan for the duration of the existing collective bargaining agreement. In affirming the trial court's grant of summary judgment in favor of the union, the Court of Appeals relied upon our decision in Bakenhus and emphasized that "`[a]n employee has a vested right in a pension or retirement system upon becoming a qualified employee, and that system cannot be altered to his detriment without corresponding benefit to him.'"Tukwila, 22 Wash.App. at 687, 591 P.2d 475 (quoting Frank, 13 Wash.App. at 405, 535 P.2d 479). The court went on to hold that because the City made past payments to the social security plan "[t]he contractual obligation of the City to contribute to a union retirement plan [was] inferred." Id. at 688, 591 P.2d 475 (emphasis added). The court reached that conclusion because the City of Tukwila made "past payments to social security for the benefit of the firefighters [and that those] payments were properly considered compensatory during arbitration proceedings between the City and the Union." Id. at 688, 591 P.2d 475. Of central importance to the holding was the fact that the collective bargaining agreement contained no provision relating to social security payments.[7] It is apparent that the decision in Tukwila turned upon the compensatory nature of the social security contributions and not on the existence of an express contractual term providing for the payments.
As noted above, this court specifically adopted the Tukwila approach in Bradford. Nevertheless, the dissent asserts that under Bradford social security payments do not fall under the Bakenhus rule unless they are included as an express term in the collective bargaining agreement. We did not, as the dissent suggests, conclude in Bradford that a mutually agreed upon contract is the only source of an obligation to fund a pension. Rather, we said "that pension benefits, including social security, when agreed upon through the collective bargaining process, are contractual in nature, and thereby obligate the employer to make contributions in accordance with the terms and duration of the collective bargaining agreement." Bradford, 106 Wash.2d at 373, 722 P.2d 95 (emphasis added). Had we believed that the court in Tukwila meant to require an express contractual term in order for the social security payments to fall under the Bakenhus rule, we would have specified "collective bargaining agreement," not "collective bargaining process" in Bradford. We did not do that. Similarly, we would have said "express contractual term," instead of "contractual *193 in nature." Clearly, this court's choice of language in Bradford reflected our understanding of Tukwila to wit: that a contractual obligation to contribute is inferred where the social security payments are properly considered compensatory. To the extent that Bradford may be read differently, it is worth noting that Bradford involved a collective bargaining agreement that included an express term regarding the funding of social security. In that regard, we agree with the Court of Appeals here that Bradford's characterization of the Tukwila opinion in the terms of a collective bargaining agreement was "more a comment on the facts in Bradford than a summary of the holding in Tukwila." Spokane Airports, 103 Wash.App. at 774, 14 P.3d 193.
We find ourselves in agreement with the Court of Appeals' analysis of our opinion in Bradford and the Court of Appeals' opinion in Tukwila. Specifically, we note that the duty to fund social security accounts flows from the compensatory nature of the social security contributions in the employment relationship, and does not necessarily flow from the collective bargaining agreement. Indeed, the real issue in Bradford was whether the employer was under a duty to provide future social security payments to the employee following the expiration of the agreement, or whether the employer was merely required to bargain in good faith. There, the duty to provide social security payments terminated when the collective bargaining agreement expired because that was when the employment relationship terminated. Washington law is clear that the contractual obligation to fund a retirement system arises from the employment relationship when the employee's right to the retirement benefit exists at the outset of the employment relationship. Bakenhus, 48 Wash.2d at 699, 296 P.2d 536. Bradford and Tukwila make it clear that this jurisprudence also applies to social security and Medicare contributions that are properly considered compensatory.
Here, as was the case in Bradford and Tukwila, the social security and Medicare payments were properly considered compensatory in the employment relationship between Airport and its fire fighter employees. In that regard, the record contains facts that demonstrate that Airport considered the social security and Medicare contributions to be part of the fire fighters' total compensation package. For example, during collective bargaining negotiations Spokane Airport's attorney, Mr. Hollingsworth, "[brought] up the issue of social security payments as one of the compensations [Union] would have to consider and include as part of [its] total compensation package.... [and], the local, agreed that social security... should be considered a part of [the] total compensation package." CP at 80. The record also reveals that Airport based fire fighter salaries, in part, upon the corresponding percentages that it contributed into its fire fighter employees' social security and Medicare accounts. When discussing salary increases, Airport indicated that the fire fighters "needed to keep in mind the total benefit package ... [including] Social Security (FICA) [Federal Insurance Contributions Act], LEOFF2 [Law Enforcement Officers' and Fire Fighters' Retirement System] Pension, Unemployment Insurance, Holiday Pay, Medicare and Industrial Disability." CP at 82 (emphasis added). Significantly, Airport does not appear to dispute that it considered the social security and Medicare contributions to be part of the fire fighters' total compensation package. This resembles the situation in Tukwila where social security payments were discussed during negotiations but were not incorporated into the collective bargaining agreement as an express term.
In sum, we are persuaded that the social security and Medicare contributions were properly considered compensatory in the employment relationship between Airport and its fire fighter employees. That being the case the fire fighter employees have an inferred contractual right in such payments. Accordingly, the trial court correctly concluded that Airport's payments to the social security accounts created an inferred contractual obligation on the part of employer and that that obligation may not be altered to the employees' detriment without providing for a corresponding benefit to the employees.

*194 V.
Airport next contends that even if Tukwila is applicable, "there is a material issue of fact regarding whether there is any contractual agreement regarding social security benefits." Br. of Appellant at 9. In this regard, Airport asserts that at the very least a jury should decide whether Airport and Union expressly agreed that the social security and Medicare payments constituted deferred compensation.
Summary judgment is appropriate only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Scott v. Pac. W. Mt. Resort, 119 Wash.2d 484, 502, 834 P.2d 6 (1992). "A material fact is one upon which the outcome of the litigation depends." Vacova Co. v. Farrell, 62 Wash.App. 386, 395, 814 P.2d 255 (1991). Facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party, and summary judgment should be granted only if a reasonable person would reach but one conclusion. Scott, 119 Wash.2d at 502, 834 P.2d 6.
The problem with Airport's contention is that the question of whether the parties expressly agreed on terms obliging Airport to contribute to the employees' social security and Medicare plans is immaterial. As we have previously held, the contractual obligation to fund the accounts flows from the compensatory nature of the social security benefits in the employment relationship. Tukwila, 22 Wash.App. at 688, 591 P.2d 475. Thus, under Tukwila, the only material fact necessary to demonstrate Airport's obligation to make the social security and Medicare payments is whether Airport and Union considered those payments compensatory. That fact is not at issue, the record established that the social security and Medicare payments were being made at all relevant times prior to the employees' decision to opt-out of the social security and Medicare plan and that they were considered part of the fire fighters' compensation. Accordingly, the trial court's order granting summary judgment should be affirmed.

VI.
In sum, we are satisfied that an association, such as Union, is not precluded from bringing a lawsuit simply because it seeks monetary relief on behalf of its members without alleging injury to itself or acquiring an assignment of the employees' claim. Under the circumstances of this case the criteria set forth in Hunt have been satisfied and, consequently, Union has standing. We are further satisfied that the collective bargaining agreement did not require Union to exhaust the arbitration process prior to bringing this action since the obligation is only contractual in nature and arises from the compensatory nature of the social security and Medicare contributions in this employment relationship. Finally, we hold that Airport is obligated to refund the matched contributions from the years 1995 to 1998 and to fund the employees' pension plan for the duration of the collective bargaining agreement.
Affirmed.
SMITH, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
Dissent by MADSEN, J.
MADSEN, J. (dissenting).
The majority opinion is contrary to established law from the United States Supreme Court and this court, which leads me to respectfully dissent.
The United States Supreme Court has held, and this court has recognized, that social security is not contractual in nature, and social security contributions do not give rise to any vested rights. For that reason, in a case similar to this one, this court acknowledged that social security does not constitute deferred compensation of a contractual nature unless the social security contributions are the subject of a contract independent of the unique federal statutory scheme of social insurance. Accordingly, this court held that if a collective bargaining agreement includes social security contributions within its agreed subjects, then social security falls within the general rule that a pension granted to a *195 public employee is in the nature of deferred compensation for services rendered.
Therefore, unless social security and Medicare contributions in this case were covered by the parties' collective bargaining contract, any resulting benefits would not be contractual in nature nor would they be deferred compensation. That would mean the employees in this case would not be contractually entitled to a refund of the employer's share of social security and Medicare contributions or continuation of corresponding benefits. Alternatively, if these contributions were covered by the parties' collective bargaining agreement, then this case must be dismissed because the Union did not exhaust its contractual remediesit did not take this matter to arbitration as required under the collective bargaining agreement. Which of these two alternatives follows depends, necessarily, upon interpretation of the collective bargaining agreementwas social security a subject of the parties' agreement? However, interpretation of the collective bargaining agreement is, by the express terms of the parties' agreement as well as by general rules applying to arbitration provisions, solely within the arbitrator's authority. Therefore, this court does not have jurisdiction to reach the merits of this case, and it should be dismissed.

I.
At issue is whether members (the fire fighters) of the International Association of Firefighters, Local 1789 (the Union) are entitled to a refund of the contributions paid by their employer, Spokane Airports (the Airport), for social security and Medicare after the fire fighters opted out of the social security and Medicare program and, following the opt out, continuance of employer contributions toward a corresponding retirement program until the end of the period covered by the collective bargaining agreement.
At the time the fire fighters opted out of the federal social security system, their collective bargaining agreement with the Airport provided that "[g]rievances or disputes... involving interpretation or application of [the agreement] shall be settled" through the grievance and arbitration procedures established by the agreement. Clerk's Papers (CP) at 36. The Airport contends that the Union was required, prior to bringing this suit, to arbitrate. The majority holds that arbitration is not required. The majority relies on Bakenhus v. City of Seattle, 48 Wash.2d 695, 698, 296 P.2d 536 (1956), reasoning that social security and Medicare coverage constitute a "`pension granted to a public employee'" that is "`deferred compensation for services rendered.'" Majority at 195. Bakenhus held that government pension rights are contractual in nature and become vested[1] when the employee begins public employment. The majority says that the Airport therefore has a duty to provide the fire fighters a corresponding benefit after the fire fighters opted out of the social security and Medicare plans. The majority says, though, that this obligation does not arise from the collective bargaining agreement, but instead is an inferred contractual obligation on the part of the employer that flows from the compensatory nature of the social security benefits in this employment relationship. Therefore, the majority reasons, the issue whether the employer's contributions should be refunded to the fire fighters and corresponding benefits provided for the duration of the collective bargaining agreement is not a matter of interpretation or application of the collective bargaining agreement. The majority maintains that Bradford v. Data Processing Joint Board, 106 Wash.2d 368, 722 P.2d 95 (1986) is not to the contrary.
The majority's analysis does not follow Bakenhus (and similar cases) and Bradford. It conflicts with the decisions in Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) and Caughey v. Employment Security Department, 81 Wash.2d 597, 503 P.2d 460 (1972) concerning the nature of social security. Finally, the majority does not follow the substantial body of state and federal decisional law concerning arbitration *196 provisions in collective bargaining agreements.
Bakenhus and similar cases do not support the majority's proposition that in this case the contractual nature of public employees' retirement rights flows from the compensatory nature of social security. In Bakenhus, the public employee's pension was established by state statutes. Each of the cases cited in Bakenhus for the proposition that the obligation to pay a public employee's pension is an obligation that is contractual in nature involved an obligation arising from state pension statutes. See Benedict v. Board of Police Pension Fund Comm'rs, 35 Wash.2d 465, 214 P.2d 171 (1950); Luellen v. City of Aberdeen, 20 Wash.2d 594, 148 P.2d 849 (1944), overruled on other grounds by Stenberg v. Pac. Power & Light Co., 104 Wash.2d 710, 709 P.2d 793 (1985); Ayers v. City ofTacoma, 6 Wash.2d 545, 108 P.2d 348 (1940). The same is true of two of the cases cited by the majority. See Horowitz v. Dep't of Ret. Sys., 96 Wash.2d 468, 635 P.2d 1078 (1981); Eisenbacher v. City of Tacoma, 53 Wash.2d 280, 333 P.2d 642 (1958). In Wilder v. Wilder, 85 Wash.2d 364, 534 P.2d 1355 (1975), also cited by the majority, a federal military pension was at issue. In Frank v. Day's Inc., 13 Wash.App. 401, 535 P.2d 479 (1975), cited by the majority for the proposition that the Bakenhus rule is not limited to public employment, a retirement trust contract was voluntarily established by the employer. In addition, cases cited in International Association of Firefighters, Local 2088 v. City of Tukwila, 22 Wash.App. 683, 591 P.2d 475 (1979), relied on by the majority, involve public pension statutes, pensions arising from private collective bargaining agreements, and voluntary employer plans. City of Tukwila, 22 Wash.App. at 687-88, 591 P.2d 475 (citing Bakenhus, 48 Wash.2d at 698, 296 P.2d 536; Dorward v. ILWU-PMA Pension Plan, 75 Wash.2d 478, 482-83, 452 P.2d 258 (1969) (private collective bargaining agreement); Frank v. Day's, 13 Wash.App. 401, 535 P.2d 479 (citing Jacoby v. Grays Harbor Chair & Mfg. Co., 77 Wash.2d 911, 468 P.2d 666 (1970) (employer voluntarily contracted with insurer to provide pension plan for employees); DeRevere v. DeRevere, 5 Wash.App. 741, 491 P.2d 249 (1971) (employer-established noncontributory retirement plan))).
In each case, the employer's "contractual" obligation to pay a pension arose because of pension statutes or an actual contract establishing pension rights. In none of the cases did a contractual obligation arise solely because benefits were characterized as compensatory. Thus, Bakenhus and similar cases do not support the majority's conclusion that based upon the compensatory nature of social security the Airport had a contractual obligation to refund the employer contributions and continue comparable retirement funding payments. In short, there must be something that can be characterized as the "contract" source of the obligation.[2]
United States Supreme Court precedent is clear that social security is not such a source; it is not contractual in nature:
The Social Security system may be accurately described as a form of social insurance, enacted pursuant to Congress' power to "spend money in aid of the `general welfare,'" Helvering v. Davis, [301 U.S. 619,] 640, [57 S.Ct. 904, 81 L.Ed. 1307 (1937)], whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents. Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. But each worker's benefits, though flowing from the contributions he [or she] made to the national economy while actively employed, are not dependent on the degree to which he [or she] was called upon to support the system by taxation. It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits *197 is bottomed on his contractual premium payments.
Flemming, 363 U.S. at 609-10, 80 S.Ct. 1367; see also Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment, 477 U.S. 41, 52, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986) (Social Security Act creates no contractual rights); Hisquierdo v. Hisquierdo, 439 U.S. 572, 575, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) ("[l]ike Social Security," railroad retirement benefits are not contractual), superseded on other grounds by statute as noted in Martin v. Martin, 385 Pa.Super. 554, 561 A.2d 1231 (1989); Richardson v. Belcher, 404 U.S. 78, 80, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) ("The fact that social security benefits are financed in part by taxes on an employee's wages does not in itself limit the power of Congress to fix the levels of benefits under the Act ... [n]or does an expectation of public benefits confer a contractual right to receive the expected amounts.").
The social security system is quite unlike the statutory and other pension plans that come under the Bakenhus rule. As this court said in Bakenhus, 48 Wash.2d at 701, 296 P.2d 536, the Legislature may not modify a public employee's pension rights prior to his or her retirement except for modifications "for the purpose of keeping the pension system flexible and maintaining its integrity." And, because the rights are contractual in nature, if changes are made that are detrimental to the employee, some corresponding benefit must be provided. Bakenhus, 48 Wash.2d at 703, 296 P.2d 536; see also Wilder, 85 Wash.2d at 367, 534 P.2d 1355; Eisenbacher, 53 Wash.2d at 283-84, 333 P.2d 642. In contrast, the Social Security Act has, since its enactment, contained an express reservation by Congress of "`[t]he right to alter, amend, or repeal any provision' of the Act." Flemming, 363 U.S. at 611, 80 S.Ct. 1367 (quoting § 1104, 49 Stat. 648, 42 U.S.C. § 1304). Congress has considerable freedom to alter the social security system.
Thus, as this court said in Bradford, 106 Wash.2d at 374-75, 722 P.2d 95, there is no contractual relationship between the federal government and the individual employees covered by social security. Indeed, this court has expressly held that social security benefits do not fall within the Bakenhus rule that "payments under government pension plans are a form of deferred compensation for past services rendered to the employer." Caughey v. Employment Sec. Dep't, 81 Wash.2d 597, 600, 503 P.2d 460 (1972). The court said that social security benefits are not a form of deferred compensation, but instead "constitute benefits under a unique federal social insurance program." Id.
In light of the noncontractual nature of social security in and of itself, the court in Bradford realized that the Bakenhus rule would not apply, as Caughey held, unless there was a "contract" source of social security (as pension rights) independent of the social security laws. It is for this reason that the court's discussion of the collective bargaining agreement in Bradford is so important. The court distinguished Caughey, concluding that the social security benefits in Bradford were contractual in nature because the City and County in the case"entered into a voluntary agreement with their employees, pursuant to their collective bargaining agreement, whereby the City and County agreed to contract with the federal government... to obtain coverage under the federal social security act." Bradford, 106 Wash.2d at 375, 722 P.2d 95 (citations omitted). The court therefore concluded that "where the relationship involved is between the State and its employees, and participation in the social security program is pursuant to a collective bargaining agreement, the right created is contractual." Id.
The majority incorrectly states that this dissent reads Bradford as saying that social security payments do not fall within the Bakenhus rule unless they are the subject of an express term in the collective bargaining agreement. As the foregoing shows, this dissent does not read Bradford as the majority asserts. Bradford does correctly recognize that social security is not contractual, and that in order for the Bakenhus rule to apply, there must be an independent contract source of the obligation to contribute to social security. The relevant question is not whether there is an express or implied or inferred contract term giving rise to the obligation, but whether there is such a contract *198 term at all. That depends upon whether there is a contract in which the term, express or implied or inferred, exists.[3] Unfortunately, the majority never identifies a contract source for the inferred contractual obligation it imposes in this case.
The majority also incorrectly states that Bradford's reference to the collective bargaining agreement is simply a comment on the facts. The court was clearly not just commenting on the facts, but was answering the respondent's argument based upon Flemming and Caughey that social security benefits are noncontractual in nature. Id. at 374-75, 722 P.2d 95.[4]
The rule from these cases is clearunless social security coverage was an agreed part of the parties' collective bargaining agreement, it is not contractual in nature and it does not come within the Bakenhus rule. Aside from the collective bargaining agreement, there is no other "contract" source of rights that could have converted noncontractual social security benefits into benefits that are "contractual" in nature.

II.
As noted, the collective bargaining agreement contains an arbitration provision that explicitly states that interpretation and application of the agreements' provisions are matters that are subject to arbitration. For this reason, as well as well-settled principles applicable to arbitrability, the issue in this case is subject to arbitration.
Initially, it must be remembered that "[a]greements to arbitrate are valid and will be enforced by the courts." Tombs v. N.W. Airlines, Inc., 83 Wash.2d 157, 160, 516 P.2d 1028 (1973). As this court has noted:
"It is the evaluation and conclusion of the arbitrator, and not those of the courts, that the parties have promised to abide by. There is no reason why, in the face of their solemn agreement, the parties should be given an alternative of invoking time consuming and costly machinery of the courts in lieu of the relative expedience of an arbitration proceeding."
83 Wash.2d at 161, 516 P.2d 1028 (quoting Hanford Guards Union of Am., Local 21 v. Gen. Elec. Co., 57 Wash.2d 491, 498, 358 P.2d 307(1961)).
State courts have jurisdiction over employer-labor disputes, but that jurisdiction must be exercised in accord with substantive principles of federal labor law. Retail Store Employees Local 631 v. Totem Sales, Inc., 20 Wash.App. 278, 281, 579 P.2d 1019 (1978). Agreements to arbitrate public sector management-labor disputes are governed by the rules set forth in the "Steelworkers' Trilogy." Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees of Peninsula, 130 Wash.2d 401, 413, 924 P.2d 13 (1996); see United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation *199 Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Under these decisions, the court must decide whether the parties have agreed to arbitrate a particular dispute. However, in making this determination, the court cannot decide the merits of the controversy; instead, the court must determine whether, on its face, a claim is covered by the arbitration provision. Am. Mfg., 363 U.S. at 568, 80 S.Ct. 1363. "[C]ourts... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." Id. (footnote omitted); accord Peninsula Sch. Dist., 130 Wash.2d at 413, 924 P.2d 13; Meat Cutters Local #494 v. Rosauer's Super Markets, Inc., 29 Wash.App. 150, 154, 627 P.2d 1330 (1981). A court must not "become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." Warrior, 363 U.S. at 585, 80 S.Ct. 1347; accord Council of City & County Employees, 32 Wash.App. at 427, 647 P.2d 1058.
Doubts must be resolved in favor of coverage, and if there is any interpretation of the contract that encompasses the disputed claim, arbitration must follow. Warrior, 363 U.S. at 582-83, 80 S.Ct. 1347; Peninsula Sch. Dist., 130 Wash.2d at 413-14, 924 P.2d 13; Int'l Bhd. of Elec. Workers Local Union 483 v. City of Tacoma, 20 Wash.App. 435, 437, 582 P.2d 522 (1978). There is a strong presumption in favor of arbitrability. Peninsula Sch. Dist., 130 Wash.2d at 414, 924 P.2d 13; Olympia Police Guild v. City of Olympia, 60 Wash.App. 556, 560, 805 P.2d 245 (1991) (citing Warrior, 363 U.S. at 581, 80 S.Ct. 1347). All disputes are presumed to fall with the arbitration provision unless negated expressly or by clear implication. Peninsula Sch. Dist., 130 Wash.2d at 414, 924 P.2d 13; Klickitat County v. Beck, 104 Wash.App. 453, 462, 16 P.3d 692 (2001); Council of County & City Employees v. Spokane County, 32 Wash.App. 422, 424-25, 647 P.2d 1058 (1982). "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must... come within the scope of the grievance and arbitration provisions of the collective [bargaining] agreement." Warrior, 363 U.S. at 581, 80 S.Ct. 1347 (emphasis added); accord Peninsula Sch. Dist., 130 Wash.2d at 415, 924 P.2d 13.[5]
Here, the dispute about refund of social security and Medicare contributions and continuation of corresponding benefits is subject to arbitration. The parties' arbitration provision requires arbitration of disputes involving the interpretation or application of the collective bargaining agreement. The parties have not expressly or by clear implication excluded the issue regarding social security benefits from their collective bargaining agreement, and the Union has not rebutted the presumption of arbitrability. Moreover, whether the agreement encompasses social security is a matter that requires interpretation of the agreement. Enter. Wheel & Car Corp., 363 U.S. at 599, 80 S.Ct. 1358 (question of interpretation of a collective bargaining agreement is for the arbitrator); see, e.g., Local Union No.77, Int'l Bhd. of Elec. Workers v. PUD No. 1, Grays Harbor County, 40 Wash.App. 61, 64, 696 P.2d 1264 (1985) (a court's inquiry is at an end if the complaint on its face calls for an interpretation of the agreement; where the need for contract interpretation cannot be characterized as "patently baseless," dispute falls within the scope of the parties' labor agreement) (quoting, among other opinions, Hanford Guards Union of Am., Local 21, 57 Wash.2d at 494, 498, *200 358 P.2d 307); Shoreline Sch. Dist. No. 412 v. Shoreline Ass'n of Educ. Office Employees, 29 Wash.App. 956, 961, 631 P.2d 996, 639 P.2d 765 (1981) (question whether shortened work week was an arbitratable issue because it required interpretation of the parties' collective bargaining agreement). There are provisions related to wages and compensation in the parties' collective bargaining agreement that might be susceptible to an interpretation that social security is within the parties' agreement. Further, there may be a question whether social security is within the bargaining agreement in light of past practices and bargaining history. "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common lawthe practices of the industry and the shopis equally a part of the collective bargaining agreement although not expressed in it." Warrior, 363 U.S. at 581-82, 80 S.Ct. 1347; see, e.g., Meat Cutters Local #494, 29 Wash.App. at 159, 627 P.2d 1330 ("interpretation" was express subject of arbitration provision; question whether employer's change in appearance standards was improper in light of past history and bargaining practices required interpretation of the labor agreement and was thus subject to arbitration).
Finally, the majority's reasoning necessarily leads to the conclusion that this case should go to arbitration, but the majority refuses to follow its own logic. The majority repeatedly characterizes the employer's obligation as arising because of the "compensatory nature" of social security in this case. If the majority means that the social security benefits are compensatory in nature, then it is wrong under federal law. However, I doubt that the majority intends to flout federal law. On the other hand, if the majority means that the contributions to social security and Medicare are compensatory in nature, as it appears, then they are part of the fire fighters' wage and benefit package. As such, they should fall within the collective bargaining agreement-a question clearly for the arbitrator under both state and federal law and thus the majority's characterization itself virtually requires that this matter be submitted to an arbitrator.

Conclusion
Social security is not, as a matter of federal law, contractual in nature. If, however, it is the subject of collective bargaining, it may be considered as deferred compensation for services rendered. And, if so, employees may be entitled to any refund of the employer's share of social security and Medicare contributions after the employees opt out of the federal program, and to continuation of like contributions toward a retirement program for the duration of their collective bargaining agreement. Thus, the question here, whether the fire fighters are entitled to refunds and corresponding benefits for the rest of the period covered by their collective bargaining agreement, depends upon whether the parties contracted for social security coverage in that agreement. However, as a matter requiring interpretation of the collective bargaining agreement, the issue in this case is subject to the arbitration provision in the agreement. Therefore, the issue should have been submitted to arbitration; it is not properly the subject of a court action. For this reason, this case should be dismissed.
JOHNSON and SANDERS, JJ., concur.
NOTES
[1] Municipal employees defined as a "coverage group" may obtain, or discontinue, social security coverage pursuant to 42 U.S.C. § 418 and chapter 41.48 RCW. RCW 41.48.050(1)(h) defines groups covered by the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, such as Union, as a "coverage group."
[2] Although the members of Union have participated in the social security and Medicare plan since 1962, Union sought relief on the employees' behalf only for the years 1995 through 1998. This is because the applicable statute of limitations barred any recovery for payments made prior to 1995. Union also sought relief from the date that its members voted to opt-out of the social security plan, March 9, 1999, to the date that the collective bargaining agreement terminated. Union has not sought any recovery relating to the period from January 1, 1999, to the March 9, 1999, opt-out date.
[3] Although Airport raised the standing issue as an affirmative defense in its answer to Union's complaint, it failed to assert it on summary judgment. The Court of Appeals, however, correctly observed that standing is a jurisdictional issue that can be raised for the first time on appeal. See Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports, 103 Wash.App. 764, 768, 14 P.3d 193 (2000) (citing RAP 2.5(a); Mitchell v. Doe, 41 Wash.App. 846, 847, 706 P.2d 1100 (1985)), review granted, 143 Wash.2d 1019, 25 P.3d 1019 (2001).
[4] Although the Court of Appeals refers to a federal bright-line rule against standing for an association seeking monetary damages on behalf of its members if it has not alleged an injury to itself or received an assignment of its members' damage claim, and a rule to that effect was adopted in Ironworkers, "[n]o court ... has pronounced a per se rule against ... damage claims on behalf of its members." Dolphin Stadium, 801 F.Supp. at 691 n. 5.
[5] This principle, however, is not limited to public employment. Whether the pension is public, established by a collective bargaining agreement, or voluntarily funded by an employer, a pension is contractual in nature. See Tukwila, 22 Wash. App. at 687, 591 P.2d 475 (quoting Frank v. Day's, Inc., 13 Wash.App. 401, 404, 535 P.2d 479 (1975)).
[6] Another local of the plaintiffs/respondents.
[7] The dissent asserts that "[i]t is unclear from [the Tukwila opinion] whether social security was part of the parties' collective bargaining agreement." Dissent at 189 n. 4. In Tukwila, however, both parties admitted" that their collective bargaining agreement does not speak to either social security or private pension plan payments." Tukwila, 22 Wash.App. at 688 n. 2, 591 P.2d 475.
[1] "Vesting" in this context means "the contractual right to a pension substantially in accord with the statutes as they existed when the employee begins service." Noah v. State, 112 Wash.2d 841, 845 n. 1, 774 P.2d 516 (1989).
[2] Apparently the majority believes that some undefined contract obligation exists between the Airport and the fire fighters and that this obligation exists outside of the collective bargaining agreement. Simply citing an "employment relationship," however, does not explain why the Airport has a contractual obligation to contribute to the social security system and Medicare.
[3] Interestingly, a careful reading of Bradford v. Data Processing Joint Board, 106 Wash.2d 368, 722 P.2d 95 (1986) does not disclose whether the term obligating the employer to contribute to social security was express or implied, though from the context one might infer it was express.
[4] The majority relies heavily on a Court of Appeals' opinion, International Association of Firefighters, Local No.2088 v. City of Tukwila, 22 Wash.App. 683, 591 P.2d 475 (1979). It is unclear from that opinion whether social security was part of the parties' collective bargaining agreement. The court there noted that a copy of the contract was not part of the record, id. at 687, 591 P.2d 475, and that the parties agreed that the agreement did not speak to either social security or private pension plans, id. at 688 n. 2, 591 P.2d 475, but also observed that payments to social security "were properly considered compensatory during arbitration proceedings between the City and the Union in 1976" (the year that the fire fighters in the case opted out of the social security program), id. at 688, 591 P.2d 475. This court in Bradford, 106 Wash.2d at 372, 722 P.2d 95, said that in Tukwila the city "entered into an agreement with its employees obligating the City to contribute to the federal social security system on behalf of all its fire fighters." Whether accurate or not, this factual recitation Bradford shows that this court believed that Tukwila was consistent with its analysis in Bradford, i.e., that factually social security was a subject of the collective bargaining agreement. In any event, the question of arbitrability was not before the court in Tukwila. In light of Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), Caughey v. Employment Security Department, 81 Wash.2d 597, 503 P.2d 460 (1972), and Bradford, to the extent that Tukwila can be read as the majority reads it, it should be disapproved.
[5] The presumption of arbitrability noted in the "Steelworkers' Trilogy" stems from § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 77-78, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). A presumption of arbitrability has also been found under the Federal Arbitration Act (FAA), 9 U.S.C. § 1. Wright, 525 U.S. at 78, 119 S.Ct. 391. (The Court recently held that the FAA applies to contracts of employment. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). A different standard applies where individual rights, such as claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 are involved. See Wright, 525 U.S. at 78-79, 119 S.Ct. 391.